# UNITED STATES *v.* BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 464. Argued October 19, 1911.—Decided October 30, 1911.

Courts are not inclined to make constructive crimes, and in this case the general rule that penal statutes must be strictly construed applies.

If there be ambiguity, the character of the statute determines for strict or liberal construction, but where there is no ambiguity the words of the statute are the measure of its meaning.

A penal statute should not be construed as confounding unwillful with willful acts by uniting in criminality and penalties parties to whom no notice need be given with those to whom notice must be given.

The provisions of § 2 of the act of March 3, 1905, 33 Stat. 1264, c. 1496, forbidding receipt for transportation of live stock from quarantined points in any State or Territory into any other State or Territory, do not apply to the receipt of live stock by a connecting carrier for transportation wholly within the State in which it is received, even though the shipment originated at a quarantined point in another State.

THE facts, which involve the construction of the Cattle Quarantine Act of March 3, 1905, 33 Stat. 1264, are stated in the opinion.

*The Solicitor General* for the United States:

The statute applies to the shipment of sheep from a quarantined State or Territory into any other State or Territory of the Union and to every carrier participating in such shipment, not alone the initial carrier who takes up the sheep in the quarantined district and carries them without, but as well to every succeeding connecting carrier doing any part of the work of transportation neces-

sary to bring the shipment from its place of beginning to its place of destination.

Considering the statute in its entirety and the purposes for which it was enacted, it is applicable to interstate shipments of live stock from place of origin to place of destination.

As a part of the statute, too, the regulations made under it, which apply of course only to interstate shipments, must be taken into consideration. Certainly it was competent for Congress to authorize a regulation which was operative from the beginning to the end of the shipment. *Leisy* v. *Hardin*, 135 U. S. 100; *Kelley* v. *Rhoads*, 188 U. S. 1.

The intention of the framers of the law was to authorize such a regulation; see the report of House Committee, No. 4200, 58th Cong., 3d Session, February 3, 1905, recommending the law in question as tending to control and eradicate the contagious diseases of animals in the United States; see also Regulations of Secretary of Agriculture of April 15, 1907, and August 16, 1909.

The act accomplishes what Congress intended and what its efficiency requires and it should be interpreted and enforced by the light of the fundamental rule for carrying out its purposes. *Rhodes* v. *Iowa*, 170 U. S. 412. The act deals with the shipment always as an entirety.

*Mr. George Hoadly*, with whom *Mr. Judson Harmon, Mr. Edward Colston* and *Mr. A. W. Goldsmith* were on the brief, for defendant in error:

The statute is penal. *United States* v. *Southern Railway Co.*, 187 Fed. Rep. 209, holding the statute to be remedial and not penal was error; and see *St. L. Terminal Co.* v. *United States*, 188 Fed. Rep. 191.

Not only does the statute impose a money penalty in favor of the United States, not of a party aggrieved, but

it declares that the violation of its provisions is a misdemeanor punishable by fine or imprisonment or both. The fact that this defendant being a corporation cannot be imprisoned does not make the statute any the less penal. As to strict construction of penal statutes, see *Huntington* v. *Attrill*, 146 U. S., p. 667; 3 Bl. Comm. 2; *United States* v. *Sheldon*, 2 Wheat. 119; *United States* v. *Wiltberger*, 5 Wheat. 76, 95; *United States* v. *Reese*, 92 U. S. 214; *Elliott* v. *Railroad Co.*, 99 U. S. 573, 576; *Trade-Mark Cases*, 100 U. S. 82; *France* v. *United States*, 164 U. S. 676; *Bolles* v. *Outing Co.*, 175 U. S. 262, 265; *United States* v. *Harris*, 177 U. S. 305, 310; *Werckmeister* v. *Am. Tobacco Co.*, 207 U. S. 381.

The defendant did not transport the live stock from the State of Kentucky to the State of Ohio. Still less did it receive them for such transportation. The transportation from Kentucky to Ohio was complete when it received them and its receipt of them was from, not for, such transportation, as a result, not with the purpose, of such transportation.

It may have been within the power of Congress to make what the defendant did an offense, but Congress has not done so.

The meaning of the statute is clear and needs no construction. "From," when used in any context resembling this, means "from within"; and the word "into" is of so simple a meaning that, so far as we have been able to discover, no court has ever been compelled to define it. *Commonwealth* v. *Erie & N. E. R. R.*, 27 Pa. St. 339; *West. Penna. R. R. Co.'s Appeal*, 99 Pa. St. 155; *Tenn. & Ala. R. R.* v. *Adams*, 3 Head, 596; *McCartney* v. *Chi. & Evanston R. R. Co.*, 112 Illinois, 611, 626; and see also *B. & O. R. R. Co.* v. *P., C. & St. L. Ry. Co.*, 55 Fed. Rep. 701; *Commonwealth* v. *Ill. Cent. R. R. Co.*, 90 S. W. Rep. 273; *Mohawk Bridge Co.* v. *Utica &c. R. R. Co.*, 6 Paige, 554.

Mr. Justice McKenna delivered the opinion of the court.

The defendant in error, called herein defendant, was indicted for violations of the act of March 3, 1905 (33 Stat. 1264, c. 1496), entitled "An Act To enable the Secretary of Agriculture to establish and maintain quarantine districts, to permit and regulate the movement of cattle and other live stock therefrom, and for other purposes."

Defendant entered a plea of not guilty, but subsequently the court quashed the indictment, following the ruling in certain other cases, and this writ of error was sued out to determine the validity of the ruling.

The efficient words of the statute are in § 2 (presently to be given), and prohibit receiving stock for transportation or to transport it from a quarantined State into any other State or Territory. A summary of the indictment is as follows:

The Secretary of Agriculture, in pursuance of the act of Congress, having determined the fact that a contagious and communicable disease, known as scabies, existed among the sheep in the State of Kentucky, as required by said act, promulgated an order and regulation establishing a quarantine in Kentucky, and gave public notice thereof, as required by the statute. And the indictment charges that he gave notice of the quarantine and of the rules and regulations established by him by sending printed copies of the same to defendant, and that the receipt of notice was acknowledged by the general manager.

There were three separate shipments (each of which is made a count in the indictment), of sheep from Kentucky upon different dates, and the cars containing the sheep were delivered to the Cincinnati, New Orleans & Texas Pacific Railway Company, and transported by it over its line of railroad to a point within the city of Cincinnati,

State of Ohio, and were delivered at such point to defendant, and by it conveyed over its line of railroad to the Union Stock Yards in Cincinnati, "being a place," as the indictment avers, "en route to the destination" of the shipments.

The cars in which the shipments were made did not have upon their sides, or at all, placards bearing the words "Dipped scabby sheep" or the words "Exposed sheep for slaughter," as provided in the orders and regulations of the Secretary of Agriculture, nor did the way-bills, conductors' manifests, memoranda, and bills of lading have written or stamped upon their face those words, as was also required by such orders and regulations.

Section 1 of the act of Congress authorizes the Secretary of Agriculture to quarantine any State or Territory, or any portion of any State or Territory, when he shall determine the fact that there exists therein live stock affected with any contagious, infectious or communicable disease, and of such quarantine he is directed to publish notice..

Section 2 forbids railroad companies and others engaged in transportation to "receive for transportation or transport . . . *from any quarantined portion of any State or Territory or the District of Columbia into any other State or Territory or the District of Columbia,* any cattle or other live stock." The statute also forbids the delivery for transportation, or the driving on foot or transporting by private conveyance, of such stock "from a quarantined State or Territory or the District of Columbia," or from any portion of either, "into any other State or Territory or the District of Columbia." And these words are repeated in other sections as descriptive of the transportation to which the statute applies.

An offender against the statute is declared (§ 6) to be guilty of a misdemeanor and punishable by a fine or imprisonment, or by both.

The question in the case is, What did Congress intend

by the words we have italicized?   Did the defendant receive the sheep for transportation from Kentucky, the quarantined State, for delivery in a State by receiving them in Ohio for delivery in Ohio?

The Government urges an answer in the affirmative and contends that not only an initial carrier, but a connecting carrier, though it receive the stock in a State other than the quarantined State (in the case at bar, Ohio), transports, within the meaning of the statute, stock "from" one State "into" another.   The argument is that necessarily such connecting carrier is instrumental in the transportation of the stock from the place of shipment to its ultimate destination, and therefore within the reason and purpose of the law.

The contention is untenable.   To receive a thing in Ohio is not receiving it in Kentucky; nor is transporting it in Ohio transporting it from Kentucky into Ohio.   To sustain the indictment, therefore, we must disregard the plain and only direct signification of the words of the statute.   Such extreme liberty with the words of a penal statute may not be taken.   We are not unmindful that our function is to seek the intention of the lawmaker and that illustrations may be found where the literal meaning of words has been extended beyond their absolute sense. But the general rule is that penal statutes must be strictly construed.   It is a familiar rule and need not be illustrated. The words of the statute, certainly when they have a sensible meaning and a definite and unmistakable signification, as the words of the statute under review have, mark its extent.   We do not mean to say that ambiguity in words may not be resolved by the clear purpose of the statute.

If, however, there be no ambiguity, the words of the statute are the measure of its meaning.   If there be ambiguity, the character of the statute determines for a strict or liberal construction.   A criminal statute is strictly

construed.  Courts are not inclined to make "constructive crimes."  We therefore might have to decide against the indictment, even if there were more ambiguity in the statute under review than we find in it.  It manifests care and a studied purpose to define the extent of the quarantine and of what shall constitute violations of it.  Within its limits there shall be no delivery of stock for transportation beyond them "into any other State or Territory" by public or private conveyance or by driving.  There is no obscurity whatever.  A sensible, definite meaning is expressed.  There must be a delivery for or a receiving for transportation "from the quarantined portion of any State or Territory . . . into any other State or Territory . . ."  That reception and that transportation are the elements of the crime and must exist to constitute it.  None of these elements are charged against the defendant.  It did not receive the sheep for transportation in Kentucky or transport them "from" Kentucky "into" Ohio.  It received them in Ohio and transported them in Ohio, and the statute thus construed adapts the remedy to the mischief.  In other words, if the breaking of quarantine is prevented, the purpose of the statute is fulfilled without subjecting to criminal accusation and penalties distant carriers who, it may be, are ignorant of the existence of the quarantine; and ignorant they may be, for the statute (§ 1) requires the Secretary of Agriculture to give notice of the establishment of quarantine only to the "transportation companies doing business in or through" the quarantined State.  It would be strange indeed if the statute intends to confound unwillful with willful acts by uniting in criminality and penalties the companies to which no notice of quarantine is required to be given with those to which notice is required.

We do not, of course, mean to say that the movement of sheep in Ohio, did not tend to spread the contagion, but it is certain there could have been no movement of

them in Ohio if they had not been transported "from" Kentucky "into" Ohio.

In *United States* v. *El Paso & N. E. Railroad Co.*, 178 Fed. Rep. 846, and in *United States* v. *Chicago, Burlington & Quincy R. R.*, 181 Fed. Rep. 882, the same construction was given to the statute that we have given it. Also by the Circuit Court of Appeals for the Eighth Circuit in St. Louis. *St. Louis Merchants' Bridge Terminal Ry. Co.* v. *United States*, 188 Fed. Rep. 191. In *United States* v. *Southern Railway Co.* (Circuit Court Dist. S. C.), 187 Fed. Rep. 209, a contrary ruling was made, and a connecting carrier which received stock outside of the limits of the quarantined State was held to be liable.

*Judgment affirmed.*