**UNITED STATES v. BEST & CO., Inc., et al.**
**Customs Appeal No. 3995.**

Court of Customs and Patent Appeals.
Nov. 9, 1936.

GARRETT, Associate Judge, dissenting.

———————◆———————

Joseph R. Jackson, Asst. Atty. Gen. (Ralph Folks and Marcus Higginbotham, Jr., Sp. Attys., both of New York City, of counsel), for the United States.

James W. Bevans, of New York City, for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the government from the judgment of the United States Customs Court, First Division, one judge dissenting, wherein the court held that the imported articles involved—wool knit sweaters—were dutiable at the rate of 50 cents per pound and 50 per centum ad valorem under the provisions of paragraph 1114 (d), § 1, Tariff Act of 1930 (19 U.S. C.A. § 1001, par. 1114 (d).

The collector classified the imported sweaters under the provisions of said paragraph 1114 (d), supra, but by virtue of the Presidential Proclamation of June 11, 1932 (47 Stat. 2517), T.D. 45756, 61 Treas. Dec. 1291, assessed duty at the rate of 50 cents per pound and 75 per centum ad valorem, as therein provided for. The said Presidential proclamation raising the ad valorem duty of 50 per centum was issued under the authority of section 336, title 3, part 2 of the Tariff Act of 1930 (19 U.S. C.A. § 1336).

Paragraph 1114 (d) as it appears in the Tariff Act of 1930, and the material portions of the Presidential proclamation, follow:

"Par. 1114. * * * (d) Outerwear and articles of all kinds, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for; * * * valued at more than $2 per pound, 50 cents per pound and 50 per centum ad valorem."

Presidential proclamation. "An increase in the rates of duty expressly fixed in paragraph 1114 (d) of Title I of said act [Tariff Act of 1930] on *infants' outerwear, knit* or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for, valued at more than $2 per pound, from 50 cents per pound and 50 per centum ad valorem to *50 cents per pound and 75 per centum ad valorem.*" (Italics ours.) 47 Stat. 2517.

Each of the judges of the trial court wrote a separate opinion, Judge Sullivan

concurring in the conclusion reached by Judge Brown, and Presiding Judge McClelland dissenting. It appears from the opinion by Judge Brown that this issue, upon a different record, was decided by the same division of the United States Customs Court in Best & Co., Inc., v. United States, T.D. 47317, 66 Treas.Dec. 383, and it is stated in Judge Brown's opinion that it was in that record "proved by the buyers and managers of New York's principal retail stores, with no effective evidence in rebuttal, that the garments involved, worn by children from two to six years under appropriate sizes were treated in retail stores as children's outerwear," and that when the garments were sold "in sizes for children below two years of age they only were offered and purchased at retail as infants' wear * * *." Upon that record the court there held that the merchandise representing sizes for children two years of age and up to six years of age was not infants' outerwear and sustained the protest of the importer as to this class of merchandise.

In the instant case, it is stated by Judge Brown that the same testimony as was adduced in said Best & Co. Case, supra, was repeated and amplified by the importers; that the government introduced "the testimony of eleven domestic manufacturers who say they treat the sizes involved appropriate for two to six years as infants' outerwear, and so sell them to the retail buyers (who testified flatly to the contrary), although these manufacturers do not so advertise them for sale nor so list them on price lists, and when they sell them, practically all these witnesses say, they offer them only by the style and size numbers and dimensions."

We have examined the record with great care, and find that Judge Brown has correctly stated the substance of the testimony of the two groups of witnesses. The testimony shows that there is a vast difference of opinion as to the common meaning of the term "infants' outerwear" in the trade and commerce of the country where knit outerwear for children is bought and sold.

Upon the instant record, Judge Brown concluded that no commercial meaning as distinguished from the common meaning of the term "infants' outerwear" had been established (and it is agreed here that none was established), and that the term "infant," if confined to "children not exceed-ing two years of age more nearly conforms to the dictionary definition as setting forth the common meaning of the term 'infant' than would result from expanding the meaning of the term 'infant' to include children up to the age of six or seven, as for instance in the schools, a special classification."

Judge Sullivan wrote an opinion concurring in the result reached by Judge Brown and stated that: "I believe such testimony [referring to the testimony of importers' witnesses] is more competent to establish what is and what is not infants' outerwear than that of manufacturers whose experience is not based on actual use, but from conversations with their confreres." He stated that: "I am not measuring it by its quantity, or the number of witnesses testifying but by the qualifications of the witnesses."

Presiding Judge McClelland dissented from the conclusion reached by his associates and stated, in part, that: "I am convinced that there is a preponderance of weight of the testimony in favor of the collector's classification based upon the fact that the term 'infants' outerwear' in ordinary usage includes such wear for children ranging from birth to six years of age." He also relied upon the dictionary definition of the term "infant."

It will thus be observed that Judges Sullivan and McClelland, in a large measure, gave controlling weight to the testimony of witnesses on the common meaning of a term used in a tariff provision, while Judge Brown relied largely, if not entirely, on the common meaning of the term as he understood it and as it was reflected by the dictionary definitions which he quotes as follows:

Funk & Wagnalls New Standard International: "Infant.—A child during the first or earliest stage of life; a babe."

Webster: "Infant.—A child in the first period of life; a babe; sometimes, a child several years of age."

Oxford: "Infant.—A child during the earliest period of life; now most usually applied to a child in arms; a babe; but often extended to include any child under seven years of age. * * * (Cf. Infant-class.)"

Webster in the small handy edition of 1911 uses these words: "Infant.—A young child; popularly a child under two years."

At the outset it is to be noted that the term "infants' outerwear" is not found in paragraph 1114 (d), § 1, Tariff Act of 1930, but from the "report to the President" of the United States Tariff Commission, Report No. 48, Second Series, found in "Reports of United States Tariff Commission, Volume 35, Second Series," it appears that the Tariff Commission's investigation of the subject-matter here involved, preceding the said proclamation of the President, was instituted in relation to infants' wool knit or crotcheted outerwear, not embroidered, in compliance with Senate Resolution No. 325, dated July 21, 1930, and that the commission extended the investigation to cover such outerwear embroidered; that during the investigation it was concluded that the duty on certain kinds of infants' outerwear should be decreased and as to other kinds of infants' outerwear it should be increased; and that, therefore, it was necessary to make a separate classification of infants' outerwear. It reported to the President that in order to equalize the differences in cost in the case of infants' outerwear, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for, valued at more than $2 per pound, it was necessary to increase the ad valorem duty to 75 per centum. This recommendation was adopted by the President in his proclamation and accounts for the classification by the collector.

While the government has cited authority to the effect that the flexible tariff provision under which the Tariff Commission and the President acted authorized the President to make a new classification (United States v. Harry Blandamer, 20 C. C.P.A. (Customs) 45, T.D. 45676), the importers make no contention here that said proclamation is invalid.

The importers make two contentions: First, that under the common meaning of the term "infants' outerwear," the involved merchandise which is intended for children of two years and over cannot be held to be included within the term "infants' outerwear"; and second, that the testimony, which should be given weight, is in accordance with said common meaning of the term. The government negatives both of these contentions.

As appears above, there is conflict between some of the dictionary definitions as to the meaning of the term "infant." In trying to ascertain the intended meaning of the term, the testimony, to put it mildly, is not helpful, since it is very conflicting and adds confusion rather than pellucidity. We are not impressed with any contention that implies that a court in arriving at the common meaning of a tariff term is bound by the weight of the testimony of witnesses as to that meaning. Such testimony, if not conflicting and confusing, is ofttimes helpful, but may be disregarded.

From the testimony of the witnesses and the opinions of the judges of the trial court, it is obvious that the proclamation made use of a term, the meaning of which is so indefinite and uncertain as to promote confusion and ambiguity. In such cases, where interpretation of the language used is required, it is proper to consider pertinent extrinsic facts if they are helpful in ascertaining its intended meaning. During the oral argument in this court, attention of counsel on both sides of this case was called to the fact that in the report of the Tariff Commission to the President, supra, upon which the President acted in the issuance of his proclamation, a provision of which is here in controversy, definite language was used which explained what was meant by the term "infants' outerwear." The report was not introduced in evidence.

The question of the propriety of taking judicial notice of this report was discussed by counsel for both sides, and the government has filed a brief on the question. In fairness to the trial court, it should here be stated that in this court it was conceded by both sides that the question was not raised in the trial below.

As to when courts may resort to public documents, texts, history of the times, and legislative history, including various phases of the proceedings of the legislative bodies which are responsible for language which is to be interpreted, this court following the decisions of the Supreme Court of the United States and other courts, has frequently and definitely spoken. From the wealth of pertinent authority, we will only cite and discuss a few of the leading cases which state certain well-settled principles which are decisive of the particular question here under consideration.

In United States v. Merck & Co., 8 Cust.App. 171, T.D. 37288, and United States v. E. De Grandmont, Inc., 21 C.C. P.A.(Customs) 17, T.D. 46345, this court collected and quoted from many of the per-

tinent authorities, most of which we think are in point here.

In United States v. Fisher et al., 2 Cranch 358, 386, 2 L.Ed. 304, Chief Justice Marshall said: "Where the mind labours to discover the design of the legislature, it seizes everything from which aid can be derived."

▆▆▆ Statements like the last above-quoted sentence are quite broad, and such language might be regarded by some as a warrant for resorting to almost anything, however remote from the question at issue, in order that a decision satisfactory to the court may be reached. We must bear in mind that it very often occurs that there are extrinsic facts which confuse an issue rather than clarify it, and the rule is well settled that where the language is plain, and but one plausible meaning can be attributed to it, extrinsic facts must not be relied upon to promote ambiguity or doubt. It is too well settled to admit of contrary contention, or to require citation of authority, that where no doubt exists as to the meaning of a term, extrinsic facts must not be resorted to to produce a doubt, and that there is no need of construction where ambiguity does not exist.

The following is quoted from 23 Corpus Juris 169 (omitting reference numerals): "[§ 2001] D. How Acquired—1. Matters of Fact. Judicial cognizance may extend to matters beyond the actual knowledge of the judge. But it is just as much an error for the court to mistake a fact of which it has taken cognizance as to mistake a principle of law. When the matter is a proper subject of judicial knowledge, the judge, in order to attain mental certainty, may require the assistance of the party who invoked his judicial knowledge; he may investigate the matter for himself, or he may pursue both courses. The scope, direction, and details of such investigation are entirely within the discretion and under the direction of the judge, uncontrolled by the rules of evidence or the wishes or suggestions of the parties. The judge may resort to or obtain information from any source of knowledge which he feels would be helpful to him, always seeking that which is most appropriate, including public official documents or records of all kinds, whether of the state or national government, such as those in the state or navy departments, census bureau, weather bureau or land office. Indeed he may resort to any public document properly authenticated, or to government publications; to dictionaries, encyclopedias, geographies, or other books, periodicals, and public addresses. * * *"

The Supreme Court of the United States, in a decision by Mr. Justice Field, in Hoyt et al. v. Russell, 117 U.S. 401, 6 S. Ct. 881, 883, 29 L.Ed. 914, reversed the Supreme Court of the Territory of Montana, because it refused to take judicial notice where private property was located or its distance from the seat of the government. The Supreme Court held that it was not necessary for that information to have been introduced in evidence, and in discussing the issue said: "Such is the case with reference to a great variety of subjects of general concern, of which courts are required to take judicial notice. Information to guide their judgment may be obtained by resort to original documents in the public archives, or to books of history or science, or to any other proper source."

In Binns v. United States, 194 U.S. 486, 495, 24 S.Ct. 816, 819, 48 L.Ed. 1087, the Supreme Court called attention to the fact that "it is also true that we have examined the reports of the committees of either body with a view of determining the scope of statutes passed on the strength of such reports." A similar holding was made in the case of Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

This court has on numerous occasions, not necessary to particularize here, given reports of congressional committees controlling effect in the decision of cases where those responsible for the legislation then being considered indicated the scope of the provision, the purpose of its enactment, or the meaning of the terms it used. See authorities cited in the Merck & Co. Case, supra, and the De Grandmont Case, supra. That courts have the right to resort to such subject-matter in their efforts to arrive at the meaning of the language involved is no longer open to question here.

In the Merck & Co. case, supra, which is probably the leading case on the question decided by this court, the following language, which has been quoted with approval by us on many occasions, was used:

"The clearly deducible rule from authorities, therefore, seems to be, that a court is warranted, that the ends of justice may not be defeated, in taking judicial notice of such public records, documents,

dictionaries, and scientific treatises which the court, under all the circumstances of the case 'may deem safe and proper.'

"It may be appropriate to remark that this conclusion perfectly accords with the practice of all courts, tribunals, and officials interpreting customs laws since the foundation of the Government and that the adoption of any other rule discards the selected and approved wisdom of both the ages and modern years, which, uniformly, it may be said, in deference to public criticism and rejection and in the interests of acceptance and approval, keeps abreast with the advance in mechanism, science, and the arts, and, in lieu thereof, would probably make such courts, tribunals, and officials controlled in their decisions by the limited knowledge of the interested and too frequently uninformed vendor of the particular merchandise."

As far as we know, the precise issue here involved—the question as to whether or not a court may take judicial notice of a report made by the Tariff Commission to the President under the flexible tariff law for the purpose of determining what was meant by an indefinite term used in a proclamation of the President resulting from such report—has never been decided by any judicial tribunal.

The Supreme Court of the United States has, on numerous occasions, referred to and considered the history of the times (United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013, Tariff Commission pamphlet considered); representations made to Congress by those interested in the legislation (American Net & Twine Co. v. Worthington, 141 U.S. 468, 12 S.Ct. 55, 35 L.Ed. 821); statements made by committee chairmen and sponsors for bills (United States v. St. Paul, Minneapolis & Manitoba Railway Co., et al., 247 U.S. 310, 38 S.Ct. 525, 62 L.Ed. 1130); and has consulted textbooks and maps (Hoyt et al. v. Russell, supra), and reports and records of government and state officials (United States v. Teschmaker et al., 22 How. 392, 405, 16 L.Ed. 353). See, also, Kirby et al. v. Lewis et al. (C.C.) 39 F. 66, 77.

In an opinion by the Supreme Court, delivered by Mr. Justice Cardozo, in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 357, 77 L.Ed. 796, is found language which is more pertinent to the exact question here at issue than is the language in any other decision examined. A question of an administrative practice in the hearings of the Tariff Commission was under consideration. Not only did the court resort to a report by the Tariff Commission "submitted by the government in connection with the briefs" for information as to such practice, but reference was made to the hearings before the commission. Not only were the report and the hearings referred to, but a treatise on "The Tariff Board and Its Work" by H. C. Emery, at page 14, was relied upon as confirming the practice as disclosed by the commission's report. The Supreme Court went much further there than we are called upon to do here.

If the statement in a committee report may be safely relied upon as throwing light upon the meaning of language used by Congress, would it not also be safe, when ascertaining the intent of the language of the proclamation, to consult a report of the Tariff Commission made to the President in an instance where he accepts such a report and adopts the language used therein? It seems to us that as between the committee report on matters like that at bar and the published report of the Tariff Commission, under the circumstances just stated, the latter would ordinarily be regarded as more pertinent and reliable than the former. The effect of the flexible tariff law is to require that if the President, by proclamation, changes the rate of duty upon the recommendation of the Tariff Commission, he must approve the rate of duty and the changes in classification recommended by the Tariff Commission. Feltex Corp. v. Dutchess Hat Works, 71 F.(2d) 322, 21 C.C.P.A. (Customs) 463, T. D. 46957. A different situation obtains as to reports of committees and the relation of the branches of the Congress thereto, and yet it is settled law that courts may resort to reports of congressional committees for such help as they may afford.

In Rotograph Co. v. United States, 1 Cust.App. 82, T.D. 31106, a volume entitled "Grammar of Lithography" was consulted "for the purpose of showing the state of the art." We there held that the court could take judicial notice of the ordinary meaning of words, and that upon such a question "dictionaries are admitted, not as evidence, but as aids to the memory and understanding of the court," and there quoted from Brown et al. v. Piper, 91 U. S. 37, 42, 23 L.Ed. 200, as follows: "Courts will take notice of whatever is generally

known within the limits of their jurisdiction; and if the judge's memory is at fault he may refresh it by resorting to any means for that purpose which he may deem safe and proper. This extends to such matters of science as are involved in the cases brought before him."

We are here confronted with a statement in the said report of the Tariff Commission (No. 48, Second Series) at page 9, as follows: "No tariff act of the United States has ever separately classified infants' wear. According to statements of domestic manufacturers and of importers at the hearing before the Tariff Commission, *the word "infant," as used in this industry, refers to children 6 years of age and under."* (Italics ours.)

When the hearings were had, when the Tariff Commission framed the language here in controversy, and when the President adopted it as his own, the word "infant" unquestionably had a certain definite meaning in the minds of those concerned. That meaning, we think, was definitely stated by the Tariff Commission as being "children 6 years of age and under." Since the dictionary definitions are at variance, and the testimony on the subject is conflicting, it would seem that a judicial interpretation of the term "infants," as used in the proclamation, should necessarily involve (when the matter is called to the attention of the court) a consideration of such a pertinent statement as the one contained in the report under consideration. To our minds, a resort to the Tariff Commission report clears the whole controversy of any uncertainty or conjecture. The report states that according to the statements made to the Tariff Commission by domestic interests and the importers at the hearing, the word "infant" referred to children six years of age and under. If the term had this meaning when the report was transmitted to the President, it would be illogical to conclude that the word was used with any other meaning in the proclamation.

To now hold with the importers that the term "infants" in the proclamation was intended to mean children only two years of age and under would, as we see it, defeat the very purposes intended and the results accomplished by the Tariff Commission and the President. The differences in the costs of production and the compensatory ad valorem rate of duty recommended and adopted, we must presume, were made upon facts developed relative to outerwear which children up to the age of six years wore. The differences in the cost of production in this country and abroad of outerwear for children two years of age and under might be greater or less than the amount which formed the basis of the action in the proclamation of the President.

We, therefore, conclude that the term "infants' outerwear," found in the proclamation, should be held to include such outerwear of such sizes and styles as are suitable for children six years of age and under.

From the foregoing, it follows that the judgment of the United States Customs Court should be, and it is, reversed.

Reversed.

GARRETT, Associate Judge (dissenting).

The majority opinion states, "From the testimony of the witnesses and the opinions of the judges of the trial court, it is obvious that the proclamation made use of a term [infants'], the meaning of which is so indefinite and uncertain as to promote confusion and ambiguity," and upon this finding is based the holding that resort, in order to solve the ambiguity, may be had to the statement contained in the "Summary" appended to the report of the Tariff Commission to the President, reading: "No tariff act of the United States has ever separately classified infants' wear. According to statements of domestic manufacturers and of importers at the hearing before the Tariff Commission, the word "infant," as used in this industry, refers to children 6 years of age and under."

It is to be noted that the finding of "confusion and ambiguity" does not rest upon any suggestion that the term "infants" is in itself ambiguous, but upon the fact that the testimony of witnesses (referring, as I understand it, to the testimony of the witnesses examined at the trial before the court below), together with the opinions of the judges of the trial court, renders it so. I find no statement in either of the opinions by the judges of the trial court that the term was regarded by any one of them as being inherently ambiguous, and I conclude, therefore, that what is meant by the reference to their opinions in the majority opinion here is that evidence of ambiguity is found in the fact that they

differed somewhat in the bases stated for their respective conclusion.

This seems to me to be resorting to matters extraneous of the language of the proclamation itself to *create* doubt, and I had thought it to be the well-settled rule of law that extraneous aids "are only admissible to solve doubt and not to create it," as was said by the Supreme Court in Railroad Commission of Wisconsin et al. v. Chicago, Burlington & Quincy Railroad Company, 257 U.S. 563, 42 S.Ct. 232, 238, 66 L.Ed. 371, 22 A.L.R. 1086.

Concededly, there is no question of commercial designation of any term as distinguished from its common meaning involved here, and, in my opinion, had no testimony been taken at the trial and had the statement of the summary accompanying the Tariff Commission's report, supra, not been brought into the case, we should have found ourselves in ready agreement that the common meaning of the term "infant," as used in the proclamation, is a child no more than two years of age, which is the substance of the primary meaning of that term given in all the dictionary definitions quoted in the majority opinion.

We experience no difficulty in accepting as the common meaning of the word "child," when it became necessary to define that term in a case involving paragraph 1513, § 1, of the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 1513), the definition of Webster's New International Dictionary, as "a young person of either sex, esp. one between infancy and youth; * * *." United States v. Abercrombie & Fitch Co., 20 C.C.P.A. (Customs) 267, 271, T.D. 46060.

The majority opinion, after stating that the testimony taken upon the trial of the case "is not helpful, since it is very conflicting and adds confusion rather than pellucidity," says: "We are not impressed with any contention that implies that a court in arriving at the common meaning of a tariff term is bound by the weight of the testimony of witnesses as to that meaning. Such testimony, if not conflicting and confusing, is ofttimes helpful, but may be disregarded."

I may say that from such study as I have given to the testimony taken at the trial, it, while conflicting, is not confusing except for the reason that it is conflicting. The statement of each witness as to his conclusion respecting the meaning of the term "infants" is in itself clear enough and is not *confused*. The testimony taken as a whole, therefore, is confusing only in that the witnesses differ in opinion—a situation which almost always arises where there is conflicting testimony about any matter. However, this is immaterial, as I view it, because the courts are at liberty to disregard all testimony stating conclusions as to the common meaning of terms. Judge Brown of the trial court evidently did wholly disregard it in reaching the conclusion reached by him, and the majority here evidently determines to disregard it, except that they accept it to show ambiguity in the meaning of a word.

Then peculiarly, it seems to me, in order to solve the doubt created by the ambiguity so held to have been established, the majority turn, not to the actual testimony given before the Tariff Commission, for that testimony is not before us, but to the statement by that tribunal of what such testimony was.

It should be noted that the Tariff Commission itself made no formal finding that the word "infant," as used in the industry under investigation, referred to "children 6 years of age and under," but merely stated in the summary accompanying the report that the "statements of domestic manufacturers and of importers" were to that effect. It does not even appear from anything which we have before us whether the "statements" of the manufacturers and importers, so alluded to, were made under oath.

The President's proclamation, of course, must be presumed to have a status the same as though it had been formally enacted by the Congress in the Tariff Act of 1930 (19 U.S.C.A. § 1001 et seq.). Theoretically, it is a part of that act, and is not to be construed in a manner different from what it would be were it in the act itself. It is not the question of *executive*, or *administrative*, but of *legislative* intent which the courts must determine. Here the President, with the aid of the Tariff Commission, merely made a finding of facts as to the differences in cost of production between domestic and foreign manufactures and, under the authority of the Tariff Act of 1930, not simply of the proclamation, the rates proclaimed to equalize such differences became effective.

In order to carry the legislative intent into effect, it was found necessary for the President to make a classification which

Congress itself had not specifically made, or at least to use phraseology which the Congress did not use, but which it may be conceded to have authorized. In applying that language, it seems to me, we should proceed just as we would proceed in applying it if it were a specific statutory provision, and, if it were so, I do not think we should find it necessary in determining the common meaning of the term "infant" to invoke extrinsic aid other than the dictionary definitions, and with its meaning determined in that manner, the statute would require no construction, but simply application according to its plain terms. If there is no ambiguity in a statute the words thereof are the measure of its meaning. United States v. Baltimore & Ohio Southwestern Railroad Company, 222 U.S. 8, 32 S.Ct. 6, 56 L.Ed. 68. Rules of construction are only intended to aid the court when the legislative language needs construction. United States v. Max Littwitz, Inc., 18 C.C.P.A. (Customs) 341, T.D. 44588.

In any event, it seems to me to be an anomaly to disregard testimony given on the trial of a case respecting the common meaning of a term, and then turn and accept, as showing the common meaning of that very term, a statement that in another proceeding, before another tribunal, certain persons said that it meant something which many of the witnesses at the trial said it did not mean. I reiterate the thought that it is perfectly proper for the court to disregard the testimony taken at the trial, but I dissent from the view that the court is bound by statements said to have been made in the other proceeding.

In stating the foregoing, I have accepted, for the purposes of this case, the view that this court is at liberty to take judicial knowledge of the report of the Tariff Commission to the President. However, in so doing I shall not feel foreclosed from considering with an open mind any question which may arise concerning such procedure in any future case.

The report was not presented in the record of the case, and, as is indicated in the majority opinion here, no question concerning it was raised in the trial court. It was not raised here by counsel for either of the parties, but was brought into the case by the author of the majority opinion during the argument before us. After being so presented, counsel for the respective parties were invited to file briefs concerning it and one was filed on behalf of the government in support of the right of this court to consider the report. Counsel on behalf of the importers filed none, but expressed the oral view that it was immaterial in this case. Such is my own view, but I reserve judgment upon the question of our right to consider such a report, or the extent to which we may go in considering one, should an issue or issues be made relative thereto in any case hereafter coming before us.

It is not improper to say that the statement of the Tariff Commission above quoted does not appear in the report proper, which was the actual basis of the proclamation, or even in the "Findings of the Commission," but in a section entitled "Summary of Information Obtained in the Investigation," and in the case of Feltex Corp. (United States Impleaded) v. Dutchess Hat Works, an American Manufacturer, 71 F.(2d) 322, 21 C.C.P.A. (Customs) 463, T.D. 46957, we held, in effect, that such a summary was not required to be included in the report to the President.

It would thus appear that the majority here take matter which is not, and is not required to be, a part of the report proper and, in effect, make such matter really decisive of the case. It is my view that such matter, even granting our authority to take judicial knowledge of it, is not controlling, and I think the judgment of the trial court should be affirmed.