BINNS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

Nos. 196, 266. Submitted April 6, 1904.—Decided May 31, 1904.

While it may not be within the power of Congress by a special system of license taxes to obtain, from a Territory of the United States, revenue for the benefit of the Nation as distinguished from that necessary for the support of the territorial government, Congress has plenary power, save as controlled by the provisions of the Constitution, to establish a government of the Territories which need not necessarily be the same in all Territories and it may establish a revenue system applicable solely to the Territory for which it is established.

The fact that the taxes are paid directly into the treasury of the United States and are not specifically appropriated for the expenses of the Territory, when the sum total of all the revenue from the Territory including all the taxes does not equal the cost and expense of maintaining the government of the Territory, does not make the taxes unconstitutional if it satisfactorily appear that the purpose of the taxes is to raise revenue in that Territory for the Territory itself.

The license taxes provided for in § 460, Title II, of the Alaska Penal Code, are not in conflict with the uniformity provisions of § 8 of Article I of the Constitution of the United States.

The general rule that debates of Congress are not appropriate sources of information from which to discover the meaning of the language of statutes passed by that body does not apply to the examination of the reports of committees of either branch of Congress with a view of determining the scope of statutes passed on the strength of such reports. *Holy Trinity Church* v. *United States,* 143 U. S. 457, 464.

SECTION 460 of Title II of the Alaska Penal Code, act of March 3, 1899, 30 Stat. 1253, 1336, as amended by the act of June 6, 1900, entitled "An act making further provision for a civil government for Alaska, and for other purposes," 31 Stat. 321, 330, reads "that any person or persons, corporation or company prosecuting or attempting to prosecute any of the following lines of business within the District of Alaska shall first apply for and obtain license so to do from a District Court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trade as follows, to wit: . . . Transfer companies, fifty dollars per annum."

Section 461 provides: "That any person, corporation or company doing or attempting to do business in violation of the provisions of the foregoing section, or without having first paid the license therein required, shall be deemed guilty of a misdemeanor," etc.

Section 463: "That the licenses provided for in this act shall be issued by the clerk of the District Court or any subdivision thereof . . . duly made and entered: . . . Provided, That . . . all moneys received for licenses by him . . . under this act shall, except as otherwise provided by law, be covered into the Treasury of the United States, under such rules and regulations as the Secretary of the Treasury may prescribe."

Under this statute, plaintiff in error was prosecuted and convicted in the District Court for the District of Alaska, Second Division. This conviction has been brought to this court on writ of error, and the question presented is whether the statute is in conflict with section 8 of Article I of the Constitution of the United States, which reads: "The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

*Mr. J. C. Campbell* and *Mr. W. H. Melson* for plaintiff in error.

*Mr. Assistant Attorney General Purdy* for the United States:

The power to impose these license fees is not derived from the general power of taxation provided for in Article I, section 8, of the Constitution, but from the plenary power "to dispose of and to make all needful rules and regulations respecting the territory or other property belonging to the United States." Art. IV, § 3, par. 2. The exercise of such power is therefore not subject to the provisions limiting the general power of taxation as to apportionment and uniformity.

It is unnecessary to ascertain or attempt to define the precise political relations existing between the Territory of Alaska and the Federal Government. That Alaska is territory belonging to the United States is settled beyond controversy, and that Congress has plenary powers, national and municipal, Federal and state, over all the Territories, so long as they remain in a territorial condition. *American Insurance Co.* v. *Canter,* 1 Pet. 511, 542; *Benner* v. *Porter,* 9 How. 235, 242; *Cross* v. *Harrison,* 16 How. 164, 193; *National Bank* v. *Yankton County,* 101 U. S. 129, 133; *Murphy* v. *Ramsey,* 114 U. S. 15, 44; *Mormon Church* v. *United States,* 136 U. S. 1, 42, 43; *McAlister* v. *United States,* 141 U. S. 174, 181; *Shively* v. *Bowlby,* 152 U. S. 1, 48; *Downes* v. *Bidwell,* 182 U. S. 244; *Hawaii* v. *Mankichi,* 190 U. S. 197.

The particular law here under discussion was enacted by Congress as a needful regulation for the government of that Territory.

The license fees imposed by this law are a part of a penal code, and in the nature of police regulations, which, in the judgment of Congress, are necessary for the government of the Territory of Alaska by reason of its social conditions. *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365; *Ficklen* v. *Shelby County,* 145 U. S. 1, 23; *Munn* v. *Illinois,* 94 U. S. 113.

The licensing of persons to sell liquor is not an exercise of the taxing power of the State to raise revenue, but of the police power for the regulation and restriction of a dangerous business; it follows that the adjustment of fees for the license is not governed by the constitutional provisions requiring equality and uniformity of taxation. Black on Intoxicating Liquors; *Thomason* v. *State*, 15 Indiana, 449. See also Black on Intoxicating Liquors, §§ 108, 109, 179, and cases there cited; *Lovingston* v. *Board of Trustees*, 99 Illinois, 564.

The Constitution requires uniformity of taxation, but does not require uniformity of police supervision. The power of Congress to adapt its police regulations, or, to use the term of the framers of the Constitution, its "needful regulations," to the peculiar conditions and needs of each separate Territory seems clear. The framers wisely avoided any attempt to create uniformity where uniformity was impossible. *Downes* v. *Bidwell*, 182 U. S. 292.

Congress has the power to license various trades and occupations in the Territories independently of and apart from the power to tax, and the mere fact that revenue is derived as an incident to the exercise of such power will not operate to characterize the license fee as a tax. For the distinction between a license which grants authority to engage in a particular business, thus conferring a privilege, and a tax granting no such authority, see the *License-Tax Cases*, 5 Wall. 462. As to the revenue feature, see *Baker* v. *Cincinnati*, 11 Ohio St. 534; *Marmet* v. *State*, 45 Ohio St. 63.

Congress could not make these licenses uniform throughout the United States.

If taxes at all, these license fees are local taxes imposed by Congress as the legislature of Alaska, and paid into the Treasury of the United States as the only treasury of Alaska, and obviously intended to meet the expenses of governing that Territory.

The only legislative body in Alaska is Congress, and similarly the only executive in Alaska is the national executive

acting through its local appointees. Alaska has no distinct treasury and no officer known as treasurer.

Admitting, for the purpose of the argument, that these license fees are local taxes imposed by Congress in the Territory of Alaska and appropriated by Congress to the support of the General Government, such a law would be constitutional under the plenary power of Congress to govern the Territories. *Downes* v. *Bidwell*, 182 U. S. 244, 299.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The contention of plaintiff in error is that the license tax is an excise, that it is laid and collected "to pay the debts and provide for the common defence and general welfare of the United States," because by section 463 it is provided that "all moneys received for licenses . . . . under this act shall . . . be covered into the Treasury of the United States," that it is imposed only in Alaska, and is not "uniform throughout the United States."

It is unnecessary to consider the decisions in the *Insular* cases, for, as said by Mr. Justice White in his concurring opinion in *Downes* v. *Bidwell*, 182 U. S. 244, 335: "Without referring in detail to the acquisition from Russia of Alaska, it suffices to say that that treaty also contained provisions for incorporation and was acted upon;" and by Mr. Justice Gray, in his concurring opinion (p. 345): "The cases now before the court do not touch the authority of the United States over the Territories, in the strict and technical sense, being those which lie within the United States, as bounded by the Atlantic and Pacific Oceans, the Dominion of Canada and the Republic of Mexico, and the Territories of Alaska and Hawaii; but they relate to territory, in the broader sense, acquired by the United States by war with a foreign State."

It had been theretofore held by this court in *Steamer Coquitlam* v. *United States*, 163 U. S. 346, 352, that "Alaska is

one of the Territories of the United States. It was so desig-
nated in that order (the order assigning the Territory to the
Ninth Judicial Circuit) and has always been so regarded.
And the court established by the act of 1884 is the court of
last resort within the limits of that Territory." Nor can it
be doubted that it is an organized Territory, for the act of
May 17, 1884, 23 Stat. 24, entitled "An act providing a civil
government for Alaska," provided: "That the territory ceded
to the United States by Russia by the treaty of March thirtieth,
eighteen hundred and sixty-seven, and known as Alaska, shall
constitute a civil and judicial district, the government of which
shall be organized and administered as hereinafter provided."
See also 31 Stat. 321, sec. 1.

We shall assume that the purpose of the license fees required
by section 460 is the collection of revenue, and that the license
fees are excises within the constitutional sense of the terms.
Nevertheless we are of opinion that they are to be regarded as
local taxes imposed for the purpose of raising funds to support
the administration of local government in Alaska.

It must be remembered that Congress, in the government
of the Territories as well as of the District of Columbia, has
plenary power, save as controlled by the provisions of the
Constitution, that the form of government it shall establish
is not prescribed, and may not necessarily be the same in all
the Territories. We are accustomed to that generally adopted
for the Territories, of a *quasi* state government, with exec-
utive, legislative and judicial officers, and a legislature endowed
with the power of local taxation and local expenditures, but
Congress is not limited to this form. In the District of Colum-
bia it has adopted a different mode of government, and in
Alaska still another. It may legislate directly in respect to
the local affairs of a Territory or transfer the power of such
legislation to a legislature elected by the citizens of the Terri-
tory. It has provided in the District of Columbia for a board
of three commissioners, who are the controlling officers of the
District. It may entrust to them a large volume of legislative

power, or it may by direct legislation create the whole body of statutory law applicable thereto. For Alaska, Congress has established a government of a different form. It has provided no legislative body but only executive and judicial officers. It has enacted a penal and civil code. Having created no legislative body and provided for no local legislation in respect to the matter of revenue, it has established a revenue system of its own, applicable alone to that Territory. Instead of raising revenue by direct taxation upon property, it has, as it may rightfully do, provided for that revenue by means of license taxes.

In reference to the power of Congress reference may be had to *Gibbons* v. *District of Columbia,* 116 U. S. 404, in which it was held that "it is within the constitutional power of Congress, acting as the local legislature of the District of Columbia, to tax different classes of property within the District at different rates;" and further, after referring to the case of *Loughborough* v. *Blake,* 5 Wheat. 317, it was said (pp. 407, 408):

"The power of Congress, legislating as a local legislature for the District, to levy taxes for district purposes only, in like manner as the legislature of a State may tax the people of a State for state purposes, was expressly admitted, and has never since been doubted. 5 Wheat. 318; *Welch* v. *Cook,* 97 U. S. 541; *Mattingly* v. *District of Columbia,* 97 U. S. 687. In the exercise of this power Congress, like any state legislature unrestricted by constitutional provisions, may at its discretion wholly exempt certain classes of property from taxation, or may tax them at a lower rate than other property."

In view of this decision it would not be open to doubt that, if the act had provided for a local treasurer to whom these local taxes should be paid and directed that the proceeds be used solely in payment of the necessary expenses of the government of Alaska, its constitutionality would be clear, but the contention is that the statute requires that the proceeds of these licenses shall be paid into the Treasury of the United States, from which, of course, they can only be taken under

an act of Congress making specific appropriation. In fact, all the expenses of the Territory are, in pursuance of statute, paid directly out of the United States Treasury. Act of June 6, 1900, Title I, sections 2 and 10, 31 Stat. 322, 325; Act of March 3, 1901, 31 Stat. 960, 987; April 28, 1902, 32 Stat. 120, 147, and February 25, 1903, 32 Stat. 854, 882. True, there are some special provisions for revenues and their application. Thus, the fees for issuing certificates of admission to the bar and for commissions to notaries public are to be retained by the secretary of the district and "kept in a fund to be known as the District Historical Library Fund" and designed for "establishing and maintaining the district historical library and museum," act of June 6, 1900, Title I, sec. 32, 31 Stat. 333, and municipal corporations are authorized to impose certain taxes for local purposes. Title III, sec. 201, 31 Stat. 521. By section 203, fifty per cent of all the license moneys collected within the limits of such corporations are to be paid to their treasurers to be used for school purposes. By subsequent legislation, 31 Stat. 1438, it is provided that if th amount thus paid is not all required for school purposes the District Court may authorize the expenditure of the surplus for any municipal purpose. And by the same statute it also provided that fifty per cent of all license moneys collected outside municipal corporations and covered into the Treasury of the United States shall be set aside to be expended for school purposes outside the municipalities. By still later legislation, (although that was enacted after the commencement of this prosecution, 32 Stat. 946,) the entire proceeds of license taxes within the limits of municipal corporations are to be paid to the treasurer of the corporation, for school and municipal purposes.

But outside of these special matters there are no provisions for collecting revenue within the Territory for the expenses of the territorial government other than these license taxes and charges of a similar nature. According to the information furnished by the officers of the Treasury Department,

as shown in the brief of counsel for the Government, all the revenues of every kind and nature which can be considered as coming from Alaska are not equal to the cost and expense of administering its territorial government. How far we are at liberty to rely upon this information, which was not presented upon the trial of this case, or how far we can take judicial notice of the facts as shown by the records of the Treasury Department, need not be determined, for if an excess of revenue above the cost and expense of administering the territorial government must be shown to establish the unconstitutionality of the license taxes the fact should have been shown by the plaintiff in error. The presumptions are that the act imposing those taxes is constitutional, and anything essential to establish its invalidity which does not appear of record or from matters of which we can take judicial notice must be shown by the party asserting the unconstitutionality.

The question may then be stated in this form: Congress has undoubtedly the power by direct legislation to impose these license taxes upon the residents of Alaska, providing that when collected they are paid to a treasurer of the Territory and disbursed by him solely for the needs of the Territory. Does the fact that they are ordered to be paid into the Treasury of the United States and not specifically appropriated to the expenses of the Territory, when the sum total of these and all other revenues from the Territory does not equal the cost and expense of maintaining its government, make them unconstitutional? In other words, if, under any circumstances, Congress has the power to levy and collect these taxes for the expenses of the territorial government, is it essential to their validity that the proceeds therefrom be kept constantly separate from all other moneys and specifically and solely appropriated to the interests of the Territory? We do not think that the constitutional power of Congress in this respect depends entirely on the mode of its exercise. If it satisfactorily appears that the purpose of these license taxes is to raise revenue for use in Alaska, and that the total revenues

derived from Alaska are inadequate to the expenses of the Territory, so that Congress has to draw upon the general funds of the Nation, the taxes must be held valid. That the purpose of these taxes was to raise revenue in Alaska for Alaska is obvious. They were authorized in statutes dealing solely with Alaska. There is no provision for a direct property tax to be collected in Alaska for the general expenses of the Territory. The entire moneys collected from these license taxes and otherwise from Alaska are inadequate for the expenses of that Territory. So far as we may properly refer to the proceedings in Congress, they affirm that these license taxes are charges upon the citizens of Alaska for the support of its government. While it is generally true that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body, *United States* v. *Freight Association*, 166 U. S. 290, 318, yet it is also true that we have examined the reports of the committees of either body with a view of determining the scope of statutes passed on the strength of such reports: *Holy Trinity Church* v. *United States*, 143 U. S. 457, 464. When sections 461 and 462 were under consideration in the Senate the chairman of the Committee on Territories, in response to inquiries from Senators, made these replies:

"The Committee on Territories have thoroughly investigated the condition of affairs in Alaska and have prepared certain licenses which in their judgment will create a revenue sufficient to defray all the expenses of the government of the Territory of Alaska. . . . They are licenses peculiar to the condition of affairs in the Territory of Alaska on certain lines of goods, articles of commerce, etc., which, in the judgment of the committee, should bear a license, inasmuch as there is no taxation whatever in Alaska. Not one dollar of taxes is raised on any kind of property there. It is therefore necessary to raise revenue of some kind, and in the judgment of the Committee on Territories, after consultation with prominent citizens of the Territory of Alaska, including the governor

and several other officers, this code or list of licenses was prepared by the committee. It was prepared largely upon their suggestions and upon the information of the committee derived from conversing with them." Vol. 32, Congressional Record, Part III, page 2235.

. While, of course, it would have simplified the matter and removed all doubt if the statute had provided that those taxes be paid directly to some local treasurer and by him disbursed in payment of territorial expenses, yet it seems to us it would be sacrificing substance to form to hold that the method pursued, when the intent of Congress is obvious, is sufficient to invalidate the taxes.

In order to avoid any misapprehension we may add that this opinion must not be extended to any case, if one should arise, in which it is apparent that Congress is, by some special system of license taxes, seeking to obtain from a Territory of the United States revenue for the benefit of the nation as distinguished from that necessary for the support of the territorial government.

We see no error in the record, and the judgment is

· *Affirmed.*

MR. JUSTICE HARLAN took no part in the decision of this case.