## In re KING SALMON FISHERIES CO.

Third Division.    Valdez.    September 21, 1923.

No. 27, in Bankruptcy.

**Bankruptcy ☞346—Fish—Licenses—Taxation.**

The King Salmon Fisheries Company failed to pay to the United States, and also to the territory of Alaska, its license taxes for the preceding year, provided for by the statutes of both the United States and the territory. Information was filed against it by the United States, and it was fined for its failure. Thereafter the company was adjudicated a bankrupt, whereupon both the United States and the territory presented claims against the bankrupt estate for the respective amounts due to each for the unpaid taxes. On objection that the amounts claimed were not taxes or debts, and could not claim priority or be collected except through the penal clauses in the fishery laws, *held*, the amounts so due to both the United States and the territory of Alaska were license taxes and debts due, and as such claims have priority over those of general creditors; also, *held*, the claim of the United States had priority over that of the territory of Alaska.

This matter by stipulation of the parties has been certified to the court by the referee in bankruptcy for decision. The United States has filed a claim for $992.08 for license taxes on salmon packed by the bankrupt company during the season of 1920;

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7 A.R.—7

also for $500 for a manufacturer's license. These are claimed to be priorities under the provisions of section 64A of the Bankruptcy Act (11 USCA § 104) making "all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality" priorities to be paid "in advance of the payment of dividends to creditors."

The territory of Alaska has filed a similar claim for $764.21, due as license taxes under territorial law for the year 1920. The territory claims these licenses are also taxes made a priority by the provision of the Bankruptcy Law just quoted.

Sherman Duggan, of Ketchikan, for the United States and territory of Alaska.

Donohoe & Dimond, of Valdez, for trustee in bankruptcy.

RITCHIE, District Judge. The demand of the United States for $500 for a maufacturer's license is wholly untenable. The law of 1906, now section 259 of the Alaska Code, providing for license taxes upon the business of canning, curing or preserving fish in Alaska, expressly stipulates that these license taxes shall be in lieu of all other license fees and taxes. The claim for a manufacturer's license in addition to the license taxes appears to me to be entitled to no consideration.

The trustee of the bankrupt resists these claims on the ground that they are not taxes within the contemplation of the Bankruptcy Act, and particularly objects to the claim of the federal government for the allowance of the taxes on the salmon pack of the bankrupt. As grounds for the objection he urges that unpaid license taxes are not a debt, nor taxes in the strict sense, but that the failure to pay such license taxes is a misdemeanor which subjects the party owing them to prosecution. In support of this he cites the Jourden Case (C. C. A.) 193 F. 986, and the Cases of the Northwestern Development Company and the Seward Peninsula Railway (C. C. A.) 203 F. 960–964.

The claim of the United States is for license taxes due under section 259, Alaska Code, which provides that salmon packers shall pay certain taxes "on their business and output," in lieu of all other license fees and taxes. It provides further that the payment and collection of such license taxes shall be in accordance with the provisions of the Act of March 3, 1899 (30 Stat. 1253), the Criminal Code of Alaska, which prescribes certain

penalties for transacting business' before paying the required license tax.   It is under the latter provision that the decisions in the Nome cases already referred to were made.

Information was filed against the corporation by the United States attorney under the Penal Code for failure to 'pay the license taxes claimed, judgment of conviction was rendered and the corporation fined $1,360.   This was before the petition in bankruptcy was filed, though that fact does not appear to me to be material in this proceeding.   Section 2301 of the Alaska Code provides:

"A judgment that the defendant pay money either as a fine or as costs and disbursements of the action, or both, must be docketed as a judgment in a civil action and may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced."

Waiving temporarily the claim of the United States that the license taxes it demands are taxes in contemplation of section 64A of the Bankruptcy Act, it seems clear that either the license demand or the fine is a debt due the United States, if not both. The amount then becomes a priority under section 64b, subdivision 5, of the Bankruptcy Act, which gives preference over general creditors to "debts owing to any person who by the laws of the states or the United States is entitled to priority." Section 3466, Rev. Stat. U. S. (31 USCA § 191), provides that:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The Supreme Court of the United States has construed section 3466 as giving a priority to all debts due to the United States next following those which are distinctly placed above such claims in the Bankruptcy Act of 1898. ' Guarantee Co. v. Title Guaranty Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706.  The opinion discusses the rank of a debt due the United States under the law of 1898 as follows:

"Priority is provided for in section 64 as follows: '(a) The court shall order the trustee to pay all taxes legally due the United States. (b) Debts to have priority, except as herein provided, and to be paid in full, * * * and the order of payment shall be: (4) Wages due to workmen, clerks, or servants which have been earned within three months before the date of the commencement of the proceedings; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority.'

"With these provisions we may compare sections 5091 and 5101 of the Revised Statutes, which are reproductions of the act of 1867. Section 5091 provided that creditors whose debts were duly proved and allowed should be entitled to share pro rata without any priority or preference except as allowed in section 5101. The latter section (5101) provided as follows:

" 'In the order for a dividend, the following claims shall be entitled to priority, and to be first paid in full in the following order:

" ' * * * Second. All debts due to the United States, and all taxes and assessments under the laws thereof. * * * Fourth. Wages due to any operative, clerk, or house servant, to an amount not exceeding fifty dollars, for labor performed within six months next preceding the first publication of the notice of proceedings in bankruptcy. Fifth. All debts due to any person who, by the laws of the United States, are, or may be, entitled to a priority, in like manner as if the provisions of this title had not been adopted. * * * '

"It will be seen, therefore, that by the statute of 1797 (now section 3466) and section 5101 of the Revised Statutes all debts due to the United States were expressly given priority to the wages due any operative, clerk or house servant. A different order is prescribed by the act of 1898, and something more. Labor claims are given priority, and it is provided that debts having priority shall be paid in full. The only exception is 'taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality.' These were civil obligations, not personal conventions, and preference was given to them, but as to debts we must assume a change of purpose in the change of order. And we can not say that it was inadvertent. The act takes into consideration, we think, the whole range of indebtedness of the bankrupt, national, state and individual, and assigns the order of payment."

It will be noticed that the court does not expressly say in this opinion that a debt due the United States has a priority over general creditors, but I cannot deduce any other meaning from this language:

"The act takes into consideration, we think, the whole range of indebtedness of the bankrupt, national, state and individual, and assigns the order of payment."

The territorial claim is similar to that of the United States. It is for license taxes collectible under the provisions of chapter

33 of the Session Laws of Alaska of 1919. It provides penalties for nonpayment similar to those of the federal law and similar methods of enforcement. It contains also the following provisions:

"Section 4. Special remedies provided by this act, or other acts of the Legislature, shall not be deemed exclusive, and any appropriate remedy, either civil or criminal, or both, may be invoked by the territory in the collection of all taxes, and in civil actions the same penalties may be collected as are herein provided in criminal actions.

"Section 5. All taxes levied, laid or provided for in this act and penalties and interest accrued, are hereby declared to be a lien upon the real and personal property of the person, firm or corporation liable therefor, paramount and superior to all mortgages, hypothecations, conveyances and assignments."

If the territorial claim for these licenses is not a tax it seems to me to be clearly an obligation covered by section 64b, subsection 5, of the Bankruptcy Act, which gives priority over general creditors to "debts owing to any person who by the laws of the states or the United States is entirely to priority." This is unquestionably true, unless the provision just quoted does not place a territorial law on the same basis as a state law. I think it does.

Therefore I reach the conclusion that, whether the claims of the United States and of the territory are or are not taxes, they are entitled to priority over claims of general creditors under section 64b, subsection 5.

Only one question remains: If the federal and territorial licenses are taxes alike, that of the United States is superior in rank. If neither is a tax, the claim of the United States is superior as a debt—either conclusion is settled law. In United States v. National Surety Co., 254 U. S. 73–75, 41 S. Ct. 29, 30 (65 L. Ed. 143), the court says:

"Section 3466, embodying the common-law rule by which the sovereign has priority over other creditors of an insolvent, United States v. State Bank of North Carolina, 6 Pet. 29, 35 [8 L. Ed. 308] declares that 'the debts due to the United States shall be first satisfied.' "

If the claim of the territory is a tax, and that of the United States is merely a debt, then the territorial claim is of higher rank, coming under section 64a, while that of the United States is under 64b(5). Counsel for the trustee suggest that the territorial licenses have a stronger argument for the claim that they

are a tax than that of the United States, because of the provision in the territorial law that they may be recovered by a civil action.   I do not consider the distinction is important enough to give that preference to the territorial law.

While it is unnecessary to decide whether or not these licenses are taxes, it is my opinion that they are, because of the language employed by the Supreme Court in Binns v. United States, 194 U. S. 486, 24 S. Ct. 816, 48 L. Ed. 1087.   This was a case from Nome, in which the issue was the constitutionality of the occupation taxes imposed upon businesses in Alaska by congressional law of March 3, 1899.   In the opinion, Mr. Justice Brewer says:

"We shall assume that the purpose of the license fees required by section 460 is the collection of revenue, and that the license fees are excises within the constitutional sense of the terms.   Nevertheless we are of opinion that they are to be regarded as local taxes imposed for the purpose of raising funds to support the administration of local government in Alaska."

The Nome cases in the Circuit Court of Appeals, relied on by the trustee as decisive against the claim that the licenses in question are taxes, seem to point strongly in favor of that view. Nevertheless they were on different facts and arose on different questions of law.   The Jourden Case ([C. C. A.] 193 F. 986) was an attempt by the federal government to collect by civil action the amount of a wholesale liquor license.   The railroad cases ([C. C. A.] 203 F. 960–964) were attempts to collect licenses by civil action and to make the claims liens upon the railroad.   The court held in each case that the only remedy was by prosecution for doing business without a license, and in the railroad cases that there was no provision of law giving a lien for the licenses even if they were collectible by civil action.   It was also pointed out in the liquor case that special requirements precede the granting of a license.

In the railroad case I question whether the court's attention was directed to section 3466.   Further, as they were not bankruptcy cases, I am satisfied the decisions are not conclusive in the case at bar.