# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 4, 2005          Decided November 4, 2005

No. 04-5190

JAMES M. BANNER, JR., ET AL.,
APPELLANTS

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01587)

---

*John W. Nields, Jr.* and *Walter Smith* argued the cause for appellants. With them on the briefs were *Gary S. Thompson* and *Carolyn Lamm.*

*Joseph A. Rieser, Jr.* and *Joseph R. Price* were on the brief for *amici curiae* District of Columbia Affairs Section of the District of Columbia Bar, et al., in support of appellants.

*Michael S. Raab*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Mark B. Stern*, Attorney.

*Jerry W. Kilgore*, Attorney General, Attorney General's Office of the Commonwealth of Virginia, *William E. Thro*, State Solicitor General, and *Maureen Riley Matsen*, Deputy State

Solicitor General, were on the brief of appellee Commonwealth of Virginia.

*J. Joseph Curran, Jr.,* Attorney General, Attorney General's Office of the State of Maryland, and *Michael D. Berman*, Deputy Chief of Litigation, were on the brief for appellee State of Maryland.

Before: CHIEF JUSTICE ROBERTS, *Circuit Justice,*[1] and ROGERS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.[2]

Opinion for the Court filed PER CURIAM.

PER CURIAM: The local government of the District of Columbia is prohibited by Congress from imposing a "commuter tax" — from taxing the personal income of those who work in the District but reside elsewhere. Appellants brought suit in the district court challenging the restriction as unconstitutional. They argue that the restriction (1) favors Congress's constituents in the states and discriminates against the unrepresented residents of the District, in violation of the equal protection component of the Fifth Amendment, and (2) contravenes the Constitution's requirement that "all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. The district court rejected both arguments and dismissed the complaint. We affirm.

## I.

The Constitution gives Congress exclusive legislative authority in all matters pertaining to the District of Columbia.

---

[1] Chief Justice Roberts was a member of this court when the case was briefed and argued and is designated Circuit Justice of this court. *See* 28 U.S.C. §§ 42, 43(b).

[2] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

U.S. Const. art. I, § 8, cl. 17. Congress has employed this power in various ways since the District was first incorporated in 1802. *See Adams v. Clinton*, 90 F. Supp. 2d 35, 47 n.19 (D.D.C.) (three-judge court), *aff'd*, 531 U.S. 941 (2000). The District initially contained three separate governments for Georgetown, Washington, and Alexandria. *Id.*[3] In the 1870s, Congress unified the District government under a three-person commission appointed by the President — a system that prevailed until 1967, when it was replaced with a commissioner and council, also presidentially appointed. *See* Reorganization Plan No. 3 of 1967, 81 Stat. 948. In 1973, Congress enacted the present form of government, known as "home rule," under which a mayor and council elected by residents of the District exercise certain executive and legislative powers delegated by Congress. *See* District of Columbia Self-Government and Governmental Reorganization ("Home Rule") Act, Pub. L. No. 93-198, 87 Stat. 774 (1973).

Since 1973, Congress has remained closely involved in the management of the District's finances. In addition to requiring enactment of annual appropriations acts for District government expenditures, the Home Rule Act also provides for an annual federal payment by Congress to the District in compensation for "the unusual role of the District as the Nation's Capital." § 501(a); *see also* Comm'n on Budget and Fin. Priorities of the District of Columbia, Financing the Nation's Capital, at 1-10 to -12 (1990). This payment amounted to approximately $660 million per year by the mid-1990s. *See Banner v. United States*, 303 F. Supp. 2d 1, 5 (D.D.C. 2004). In 1997, Congress repealed the system of federal payments and began directly subsidizing

---

[3] Alexandria and District land west of the Potomac River were returned to Virginia in 1846 because, in the words of Congress, "experience [had] shown that [the land] has not been, nor is ever likely to be, necessary for" the seat of government. Act of July 9, 1846, 9 Stat. 35.

certain District operations, including Medicaid, the local courts, and the prison system. *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, 111 Stat. 712.

At issue in this case is one of the terms of the 1973 "home rule" delegation. The Home Rule Act prohibits the District Council from imposing "any tax on the whole or any portion of the personal income, either directly or at the source thereof, of any individual not a resident of the District." § 602(a)(5); *see* D.C. Official Code § 1-206.02(a)(5) (2001). The provision prevents the District government from taxing the personal income of those who work in the District, but reside outside it.

Plaintiffs are several District residents, the Mayor, the Council of the District of Columbia and its members, and the District of Columbia itself. Together these individuals and entities filed suit against the United States challenging the commuter tax restriction as unconstitutional. They assert that the restriction discriminates against District residents in favor of residents from neighboring states, depriving the District of $30 billion annually in taxable non-resident income (or about $1.4 billion in annual tax revenue at present District tax rates). Compl. ¶¶ 6, 7.[4] As a result, they contend, the District's fiscal system labors under a "structural imbalance" — a revenue shortfall of between $470 million and $1.1 billion annually that

---

[4] An individual who resides in one jurisdiction and earns income in another normally incurs tax liability in both jurisdictions. Most states, including Maryland and Virginia, offer credits to residents who pay income tax in other jurisdictions. Thus, a commuter tax would not necessarily affect the total tax liability of Maryland and Virginia residents who work in the District. The state governments themselves, however, would lose revenue roughly in the amount of the District's gain, and would presumably have to make up the shortfall by raising taxes or cutting spending. *See* Appellants' Br. at 7 & n.7.

would persist "even if the District's services were managed efficiently." *Id.* ¶ 3 (quoting General Accounting Office, District of Columbia: Structural Imbalance and Management Issues 8 (2003)). Plaintiffs claim that this imbalance forces District residents to bear a higher local tax burden than they otherwise would. *Id.* ¶ 7.

The State of Maryland and the Commonwealth of Virginia intervened in the district court and, along with the federal defendants, moved to dismiss the complaint. The district court granted the motion, concluding that "the Constitution and binding Supreme Court and Circuit precedent establish Congress' plenary power over the District and its residents and their unique status within our constitutional framework," and that the court "lack[ed] the power to grant the remedy that plaintiffs seek." *Banner*, 303 F. Supp. 2d at 26. Plaintiffs now bring this appeal. We review *de novo* the district court's decision to dismiss the complaint. *See Barr v. Clinton*, 370 F.3d 1196, 1201 (D.C. Cir. 2004).

## II.

We begin with equal protection.[5] Congress has delegated

---

[5] Appellee the Commonwealth of Virginia raises a threshold challenge to the standing of appellants to invoke the court's jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The Commonwealth argues that plaintiffs' injury is neither sufficiently particularized nor redressible by the relief sought. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The district court properly disposed of these contentions. The individual appellants' claim that they bear a higher tax burden due to a discriminatory tax "is sufficient to establish standing." *Orr v. Orr*, 440 U.S. 268, 273 (1979). As to redressibility, while a favorable ruling would not automatically remove appellants' burden, relief is sufficiently likely: the District Council has passed a resolution stating that, absent the restriction, it would enact an income tax on non-residents. *See*

to the District the authority to tax the personal income of District residents; it has withheld such authority to tax non-residents who work in the District. Appellants argue that this restriction violates the equal protection component of the Fifth Amendment's Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954).

The first issue in equal protection analysis is whether the distinction drawn by Congress demands heightened scrutiny. *See Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1153 (D.C. Cir. 2004). Strict scrutiny — the most demanding variety — is warranted if the restriction "jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). A less exacting, but still heightened, standard applies to classifications based on sex. *See United States v. Virginia*, 518 U.S. 515, 532 (1996). Otherwise, equal protection "requires only that the classification rationally further a legitimate state interest." *Hahn*, 505 U.S. at 10.

Appellants' most obvious avenue to heightened scrutiny is blocked. They do not, and could not, argue that District residents form a "suspect class" for equal protection purposes. We have squarely held otherwise. *See Calloway v. District of Columbia*, 216 F.3d 1, 7 (D.C. Cir. 2000) ("a panel of this court may not now depart from the *en banc* court's conclusion that D.C. residents do not comprise a suspect class for equal protection purposes"); *United States v. Cohen*, 733 F.2d 128, 136 n.12 (D.C. Cir. 1984) (en banc) (rejecting argument that "distinctive legislative treatment of the District is 'particularly suspect' and

District Resolution § 2(12); *see also Defenders of Wildlife*, 504 U.S. at 561. Because the individual plaintiffs have standing for each claim, we need not consider the standing of the institutional plaintiffs before proceeding to the merits. *See Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 429 (D.C. Cir. 1998) (en banc).

thus requires more than a rational basis to support it").

Instead, appellants argue that heightened scrutiny is required whenever a legislature imposes a tax that favors its constituents at the expense of persons who are not represented in the legislature. Br. at 20. They derive this principle from a line of Supreme Court decisions invalidating state tax laws that treat non-residents less favorably than residents. *See Williams v. Vermont*, 472 U.S. 14 (1985); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985); *Austin v. New Hampshire*, 420 U.S. 656 (1975); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562 (1949). None of these cases, however, applied strict scrutiny. In *Williams* and *Metropolitan Life* — the most recent of appellants' cases — the Court applied only rational basis review. *See* 472 U.S. at 22–23; 470 U.S. at 875. *Wheeling Steel* did not apply any particular level of scrutiny, likely because it was decided before the elaboration of equal protection categories of review. The tax statute in *Austin* was invalidated only under the Privileges and Immunities Clause of Article IV. *See* U.S. Const., art. IV, § 2; *Austin*, 420 U.S. at 668. That decision therefore neither prescribes heightened scrutiny for equal protection purposes nor applies to Congress when it legislates for the District. *See Neild v. District of Columbia*, 110 F.2d 246, 249 n.3 (D.C. Cir. 1940) (Privileges and Immunities Clause is "a limitation upon the states only and in no way affects the powers of Congress over the District of Columbia"). If we adhere to the decisions on which appellants themselves rely, we should consider only whether the commuter tax restriction "rationally further[s] a legitimate state interest." *Hahn*, 505 U.S. at 10.

Appellants urge that "[r]egardless of the precise standard, the [Supreme] Court has ultimately struck down all state tax laws that do not treat unrepresented outsiders equally; whereas, tax laws discriminating against a State's own residents — who *are* represented — are upheld." Br. at 27. In *Metropolitan Life*, for example, the Court held unconstitutional an Alabama statute

that taxed premiums paid to in-state insurance companies at a lower rate than premiums paid to out-of-state companies. Equal protection, the Court ruled, does not permit a state "constitutionally [to] favor its own residents by taxing foreign corporations at a higher rate solely because of their residence." 470 U.S. at 878. Appellants generalize this holding to cover all "tax laws discriminating in favor of a legislature's constituents," including cases where Congress legislates in a manner that discriminates against the unrepresented residents of the District. Br. at 28.[6]

Even assuming that *Metropolitan Life* and similar cases can fairly be read for this broader principle, appellants' reasoning encounters a major difficulty. The Constitution grants Congress authority "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States." U.S. Const. art. I, § 8, cl. 17. Congress, when it

---

[6] For this proposition, appellants also lean heavily on a concurrence by Justice Brennan in *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522 (1959), in which the Court sustained an Ohio law exempting certain non-resident personal property from taxation. Justice Brennan sought to distinguish the Ohio law from a similar law treating non-residents *less* favorably that the Court had previously struck down. As the district court recognized, *Banner*, 303 F. Supp. 2d at 13, a "fair reading" of the concurrence reveals that the distinction lay not in any special concern about non-residents' lack of representation in the legislature, but in equal protection's role in "protect[ing] our federalism," *Allied Stores*, 358 U.S. at 533. A law favoring non-residents, the concurrence observed, "clearly presents no state action disruptive of the federal pattern." *Id.* The same concern about discrimination "disruptive of the federal pattern" does not arise when Congress, "as a legislature of national character," *Neild*, 110 F.2d at 250, exercises its authority over the District.

legislates for the District, stands in the same relation to District residents as a state legislature does to residents of *its own* state. *See Mercury Press v. District of Columbia*, 173 F.2d 636, 637 (D.C. Cir. 1948) (Congress legislates for the District "in like manner as the legislature of a state" (quoting *Gibbons v. District of Columbia*, 116 U.S. 404, 407 (1886))). "Not only may statutes of Congress of otherwise national application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Palmore v. United States*, 411 U.S. 389, 397 (1973).

This is true notwithstanding that the Constitution denies District residents voting representation in Congress. *See Adams*, 90 F. Supp. 2d at 72. Indeed, appellants' claim amounts to little more than a collateral challenge to the District's lack of representation. They argue that because District residents are not represented in Congress, Congress's real constituents reside in the states. Therefore, the argument goes, actions by Congress that favor those constituents over District residents should be deemed suspect. The suggestion is that District residents stand in the same relation to Congress as, say, residents of New York to New Jersey's state legislature — just as New York's residents are not represented in New Jersey's legislature, District residents are not represented in Congress. This argument misses the special character of the District under the Constitution. Congress is not a foreign sovereign government in relation to the District, as the New Jersey legislature is to New York; Congress *is* the District's government, *see* U.S. Const. art. I, § 8, cl. 17, and the fact that District residents do not have congressional representation does not alter that constitutional reality.

Given Congress's control over the District, appellants must in effect contend that in enacting the commuter tax restriction, Congress has improperly preferred its role as the national

legislature to its role as the local one for the District. But in this, their dispute lies with the plan of the Constitution and the judgment of its Framers. The evident purpose of granting Congress authority over the District was to provide the federal government a place where it would not be harassed or neglected by local interests. *See* The Federalist No. 43 (James Madison); 2 Joseph Story, Commentaries on the Constitution of the United States § 1219 (5th ed. 1891) (suggesting that Pennsylvania's refusal to defend the Continental Congress from an angry crowd of disbanded but unpaid Revolutionary War soldiers ultimately led to inclusion of the District Clause). The Framers would naturally have expected that where tensions between local and national interests arose, they could be resolved by Congress with due consideration for the latter. *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 429 (1821) (Marshall, C.J.) ("Congress is not a local legislature, but exercises this particular power, like all its other powers, in its high character, as the legislature of the Union. The American people thought it a necessary power, and they conferred it for their own benefit.").

Of course, none of this is to say that Congress can legislate for the District without regard to other constitutional constraints. *See Palmore*, 411 U.S. at 397. For example, a law employing a suspect classification is hardly immune from close scrutiny because it applies only to the District. But it *is* to say that there is nothing inherently suspect in the prospect that Congress might give decisive weight to national rather than local considerations when it legislates for the District. The very point of having a national capital area subject to congressional rather than state control was to allow Congress to do just that. Appellants' structural bias argument does not, therefore, support heightened scrutiny under the equal protection component of the Fifth Amendment.

Under rational basis review, the commuter tax restriction must be sustained "if any state of facts reasonably may be

conceived to justify it." *Sullivan v. Stroop*, 496 U.S. 478, 485 (1990) (citation omitted). This is not hard to do, and appellants in effect concede the point by acknowledging that a state could constitutionally enact a similar restriction. *See Banner*, 303 F. Supp. 2d at 15. Congress may have been concerned that a commuter tax would cause District businesses to relocate to nearby Maryland and Virginia, where income tax rates are generally lower. *See Allied Stores*, 358 U.S. at 528–29 (under Equal Protection Clause, a state may properly provide incentives for non-residents to do business within its borders). Or it may have decided that the enhanced burden of financing the District's operation should fall on the nation at large, rather than on the residents of neighboring states. These need not have been the actual motives behind the restriction, *see id.* at 528, for their plausibility alone is enough to sustain it under rational basis review.

## III.

The Constitution gives Congress the "Power To lay and collect Taxes," but requires that "all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. Appellants argue that the commuter tax restriction violates the uniformity requirement because Congress has prohibited a non-resident income tax only in the District, and nowhere else, and has done so "to benefit other portions of the country — most particularly, Maryland and Virginia." Br. at 36.

The Uniformity Clause is not exactly well-trodden constitutional terrain. The Supreme Court has observed that the records of the Constitutional Convention shed only scattered light on its meaning and scope, *see United States v. Ptasynski*, 462 U.S. 74, 80–81 & n.10 (1983), and even until the turn of the last century it was not settled that the clause referred only to *geographical* uniformity. *See Knowlton v. Moore*, 178 U.S. 41 (1900) (settling the matter). Nevertheless, its purpose has been divined from the Framers' concern that Congress "would use its power

over commerce to the disadvantage of particular States." *Ptasynski*, 462 U.S. at 81; *see also Knowlton*, 178 U.S. at 103–05.

A special problem arises in applying the Uniformity Clause not to Congress's interstate commerce power, but to its authority over the District and other territories that it governs directly. In such instances it has been understood that Congress may impose local taxes without running afoul of the Clause. *See Mercury Press*, 173 F.2d at 637 ("It has long been established that Congress may constitutionally impose excises in the territories which it governs directly, without making such excises generally applicable to the country at large."). This makes sense. If, in governing the District, Congress can "exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes," *Palmore*, 411 U.S. at 397, it undoubtedly has the authority to enact taxes for the District alone, just as a state could. *See Gibbons*, 116 U.S. at 407–08 (Congress has power "to levy taxes for District purposes only, in like manner as the legislature of a State may tax the people of a State for State purposes"). The taxes Congress may assess in the District could hardly be "uniform throughout the United States," and still function as the equivalent of state taxes. Given Congress's authority under the District Clause, the Uniformity Clause would appear to have little relevance to Congress's local taxation of the District.

The Supreme Court has, however, applied the Uniformity Clause in a related context. In *Binns v. United States*, 194 U.S. 486 (1904), the Court considered a challenge to a congressionally-enacted license tax for the territory of Alaska. The basis for the challenge was the fact that revenues from the tax were paid to the federal treasury rather than to a treasurer for the Alaskan territory. The Court observed that the tax's "constitutionality would be clear" if it were paid directly to a

local treasurer, *id.* at 492, but nevertheless saw no problem in having the revenues instead paid to the federal treasury, provided that the tax's purpose was to raise revenue for Alaska and "the total revenues derived from Alaska are inadequate to the expenses of the Territory." *Id.* at 494–95.

The Court in *Binns* seems to have understood a local tax on a territory to pose no Uniformity Clause problem as long as it does not cloak a kind of mercantilist policy toward the territory. Thus the Court advised — in dictum never since revisited by the Court — that its ruling "must not be extended to any case, if one should arise, in which it is apparent that Congress is, by some special system of license taxes, seeking to obtain from a territory of the United States revenue for the benefit of the nation." *Id.* at 496.

The commuter tax restriction at issue here, of course, does not fit within the letter of this cautionary dictum from *Binns*. It is not a "system of license taxes," but a limitation on Congress's delegation of taxing authority to the local District government. It does not generate surplus tax revenue beyond the needs of the District "for the benefit of the nation." Far from it: the restriction itself, which *exempts* certain income from taxation, raises no revenue at all.

Appellants argue, however, for a broader reading of *Binns*. According to them, *Binns* stands for the proposition that "when Congress purports to act as a local legislature but in fact acts in part for a national purpose, its action is subject to the limitations of the Uniformity Clause." Br. at 40. Here, they contend, "Congress has enacted a Prohibition on taxes in the District in order to produce revenues not for the District — but for other parts of the Nation." *Id*. at 38. In doing so, Congress has "preferr[ed] the States at the expense of the District," *id*. at 37, because the restriction leaves more income to be taxed by the states and less for the District.

There is good reason, however, not to read *Binns* so expansively.  Appellants' reading is inconsistent with Congress's constitutional authority over the District.  If congressional legislation for the District were scrutinized merely because it had the *effect* of "preferring the States at the expense of the District," Br. at 37, Congress's authority over the District would be much less substantial than the power "[t]o exercise exclusive Legislation in all Cases whatsoever" granted to it by the Constitution.  U.S. Const. art. I, § 8, cl. 17.  Even routine instances of that authority might be called into question.  Indeed, in financing the District, Congress necessarily faces a choice between using revenues from local taxation and general revenues, *i.e.*, revenues largely derived from the states.  Any decision to rely more on the former would seem to implicate appellants' reading of *Binns*.  For example, if Congress were to cease funding the local courts, thereby requiring the District government to fund them by raising taxes, Congress could be said "to relieve its constituents at the expense of District residents," Br. at 38, and thus act in violation of the Uniformity Clause.   We see no reason to adopt a reading of *Binns* so in tension with Congress's constitutional authority over the District.

The commuter tax restriction is more properly viewed as simply an aspect of Congress's authority to levy local taxes on the District and therefore entirely consistent with the Uniformity Clause.  Congress has delegated to the District government the power to levy an income tax while restricting the kinds of income the District may tax.  The arrangement is no different from Congress determining how to treat various types of income in the course of imposing an income tax itself.  Governments often must decide, as Congress has here, how to treat revenue sources on which another jurisdiction may have a claim.  *See, e.g.*, D.C. Official Code § 47-1809.01 (2001) (residency definitions for tax on estates and trusts); *id.* § 47-3703 (tax on transfer of taxable estate of non-residents).  If Congress has the

authority to impose local taxes on the District — and it does, *see Mercury Press*, 173 F.2d at 637 — it surely can make such determinations in the course of exercising that authority.

The fact that no state currently exempts all non-resident income from its income tax is of no consequence. Any state could do so tomorrow, *see Allied Stores*, 358 U.S. at 530: would Congress then have the power to enact the commuter tax restriction? Congress's authority over the District is not so precarious. It is enough that the power Congress has exercised here within the District is one that "the legislature of a State *might* exercise within the State." *Palmore*, 411 U.S. at 397 (internal quotation marks omitted) (emphasis added). As such, the restriction does not violate the Uniformity Clause.

\*      \*      \*

It is beyond question that the Constitution grants Congress exclusive authority to govern the District, but does not provide for District representation in Congress. That constitutional plan does not require heightened scrutiny of congressional enactments affecting the District. The policy choices are Congress's to make; we hold simply that the commuter tax restriction does not violate equal protection or the Uniformity Clause of the Constitution. The judgment below is

*Affirmed.*