# United States Court of Appeals
## For the First Circuit

No. 23-1267

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Sales Tax Financing Corporation, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Highways and Transportation Authority; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Electric Power Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative of the Puerto Rico Public Buildings Authority,

Debtors,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico,

Plaintiff, Appellee,

v.

RAFAEL HERNÁNDEZ-MONTAÑEZ,

Defendant, Appellant,

PEDRO PIERLUISI-URRUTIA,

Defendant, Appellee.

No. 23-1268

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Sales Tax Financing Corporation, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Highways and Transportation Authority; THE FINANCIAL OVERSIGHT AND

MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Electric Power Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative of the Puerto Rico Public Buildings Authority,

Debtors,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico,

Plaintiff, Appellee,

v.

PEDRO PIERLUISI-URRUTIA,

Defendant, Appellant,

RAFAEL HERNÁNDEZ-MONTAÑEZ,

Defendant, Appellee.

No. 23-1358

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Sales Tax Financing Corporation, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Highways and Transportation Authority; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Electric Power Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative of the Puerto Rico Public Buildings Authority,

Debtors,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico,

Plaintiff, Appellee,

v.

PEDRO PIERLUISI-URRUTIA,

Defendant, Appellant,

RAFAEL HERNÁNDEZ-MONTAÑEZ,

Defendant, Appellee.
_____

Before

Barron, <u>Chief Judge</u>,
Lynch, Howard, Kayatta, Gelpí, Montecalvo, and Rikelman,
<u>Circuit Judges</u>.
_____

**ORDER OF COURT**
Entered:  September 21, 2023

Pursuant to First Circuit Internal Operating Procedure X(C), the petition for rehearing en banc has also been treated as a petition for rehearing before the original panel.  The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and petition for rehearing en banc be denied.

**GELPÍ**, **<u>Circuit Judge</u>**, **concurring in the denial of rehearing en banc.**  The panel's decision holding that the present case was properly before Judge Swain and that the Financial Oversight and Management Board ("the Board") could invalidate Puerto Rico Act 41-2022, in my view, is legally correct.  Accordingly, I vote to deny en banc review.

I write separately to address a matter which Appellant, the Speaker of Puerto Rico's House of Representatives ("the Speaker"), raised before the panel and raises again before the en banc court:  the lack of consent of the governed, which the citizenry of Puerto Rico live under.[1]  <u>See</u> Appellant Hernández-Montañez's Br. at 2-3 ("[T]he Board sought to frustrate the will of Puerto Rico's voters by attempting to weaponize PROMESA to impose its policy views on what should be the rights of private sector employees."); Appellant Hernández-Montañez's Pet. Reh'g at 1 ("[T]he panel's decision dramatically expands the already significant authority . . . of [the Board] in a way that has the effect of further diluting the authority of Puerto Rico's elected government and, by extension, diluting the votes that Puerto Ricans cast every first Tuesday of November in a leap year.").

_____

[1] Consent of the governed is a paramount principle set forth in the Declaration of Independence.  In a Lockean sense, it establishes that rule cannot take place without the consent of the people being governed.  It is one of the pillars upon which the United States was established.

- 3 -

It is true that Congress, by enacting the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq., has given the Board ample veto power over actions by Puerto Rico's government that, in one way or another, have a fiscal impact (or lack thereof) on its coffers. The Speaker implies that this democratic anomaly further invalidates the statute and the Board's action, for which he has sought our review. But the Speaker has chosen the incorrect forum to present this argument.

The Speaker's plight is by no means unheeded. Congress approved Puerto Rico's Constitution, duly enacted by its People, in 1952 to "accord to [it] the degree of autonomy and independence normally associated with States of the Union." Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 594 (1976). Following the enactment of PROMESA, however, "the republican form of government bestowed by Congress upon the Island's government . . . has been de facto trumped." Gustavo A. Gelpí, The Constitutional Evolution of Puerto Rico and Other U.S. Territories (1898 - Present) 218 (Interamerican Univ. of P.R. 2017); see United States v. Santiago, 998 F. Supp. 2d 1, 2 (D.P.R. 2014) (Gelpí, J.) ("United States citizens residing in Puerto Rico, have historically lived under a system of federal laws in which the constitutional principle of consent of the governed is a fallacy." (emphasis omitted)); Salvador E. Casellas, Commonwealth Status and the Federal Courts, 80 Rev. Jur. U.P.R. 945, 962 (2011) ("Over a half-century after the Commonwealth was established, the principle of the consent of the governed, in the case of Puerto Rican-Federal relations, has been substantially eroded, largely due to the widening sphere of federal authority." (emphasis omitted)).

As my much-esteemed late colleague, Judge Juan R. Torruella, aptly put it, we live in a nation "that touts itself as the bastion of democracy throughout the world," and yet "[i]t is now an unassailable fact that what we have in the United States-Puerto Rico relationship is government without the consent or participation of the governed." Juan R. Torruella, The Insular Cases: A Declaration of Their Bankruptcy and My Harvard Pronouncement, in Reconsidering the Insular Cases: The Past and Future of the American Empire 61, 74 (Gerald L. Neuman & Tomiko Brown-Nagin eds., 2015).[2] Such characterization could not be more prophetic than upon PROMESA's enactment. Not only do we now have a federal law specifically tailored to temporarily and partially supersede Puerto Rico's Constitution,[3] but one which gives carte blanche to a Board -- composed of presidential appointees not subject to Senate confirmation -- to override an otherwise validly enacted law of Puerto Rico.[4] But this woeful predicament is one which existed in Puerto Rico even prior to the enactment of its Constitution, as evidenced by

---

[2] Judge Torruella's keynote address at Harvard Law School's conference "Reconsidering the Insular Cases" is also available on YouTube. See Harvard Law School, The Insular Cases: A Declaration of Their Bankruptcy and My Harvard Pronouncement, YouTube (Feb. 19, 2014), https://www.youtube.com/watch?v=aixtvS4Jack.

[3] The Speaker himself recognizes PROMESA's preemptive provisions. See Appellant Hernández-Montañez's Br. at 1-2 ("To the extent that Puerto Rico's Constitution was not repealed by PROMESA (even if a few of its provisions do preempt it), its implementation must always be respectful of the People's democratic exercise of electing officers to represent their interests and to enact policies to make their lives better.").

[4] See Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649, 1665 (2020) (upholding the constitutionality of the appointment process for the Board's members).

- 4 -

the Supreme Court of Puerto Rico's statement that its "high executive officers d[id] not derive their authority and power from the consent of the governed." Buscaglia v. Dist. Ct. of San Juan, 145 F.2d 274, 283 (1st Cir. 1944).

So, as democratically abhorrent and offensive a premise as the above dilemma of the People of Puerto Rico may be -- as citizens of a Nation established under a government for the people, by the people -- the Speaker cannot count on the principle of the consent of the governed to invalidate PROMESA, nor the Board's annulment of Act 41-2022.[5] "In our Nation's history, no Act of Congress [directed at a territory] has eve[r] been held unconstitutional based on the principle of consent of the governed. Indeed, said concept is not a fundamental guarantee within the Bill of Rights, nor in any specific article of the Constitution." United States v. Pedro-Vidal, 371 F. Supp. 3d 57, 59 (D.P.R. 2019) (Gelpí, J.).[6] Otherwise, every federal Act directed towards Puerto Rico beginning in 1900, including Congress's unilateral amendments to its constitution in 1952, would be void. See Aurelius, 140 S. Ct. at 1660-61 ("[O]ur precedents . . . have long acknowledged that Congress may structure local [territorial] governments under Article IV and Article I in ways that do not precisely mirror the constitutional blueprint for the National Government.").[7]

Ultimately, then, the final word rests on the shoulders of Congress. See Nat'l Bank v. County of Yankton, 101 U.S. 129, 133 (1879) (holding that Congress "has full and complete legislative authority over . . . the departments of the territorial governments" and that "[i]t may do for the Territories what the people, under the Constitution of the United States, may do for the States," in a controversy arising in the Dakota territory).[8]

---

[5] Consent of the governed is not part of the constitutional charter for our national governance, to wit, the Constitution and Bill of Rights, nor the Laws of the United States. As such, consent of the governed does not provide any right of action that may be pursued via the Article III branch, as the Speaker incorrectly suggests.

[6] This situation is not unique to Puerto Rico, given that "with the exception of the thirteen original States, . . . other states underwent a period of territorial governance before admission to the Union. During such territorial periods, federal laws applied therein, despite a lack of participation in the federal [lawmaking] process." Pedro-Vidal, 371 F. Supp. 3d at 59.

[7] As Aurelius makes clear, Puerto Rico continues to fall under the Territorial Clause of the U.S. Constitution. 140 S. Ct. at 1654.

[8] In regard to a dispute regarding Alaska, see In re Annexation of Slaterville to Town of Fairbanks, 83 F. Supp. 661, 663 (Terr. Alaska 1949) ("It must be remembered that Congress, in the government of the territories . . . has plenary power, save as controlled by the provisions of the Constitution; that the form of government it shall establish is not prescribed, and may not necessarily be the same in all the territories. We are accustomed to that generally adopted for the territories, of a quasi state government, with executive, legislative, and judicial officers . . . ; but Congress is not limited to this form. In the District of Columbia[,] it has adopted a different mode of government, and in Alaska still another." (quoting Binns v. United States, 194 U.S. 486, 491 (1904))).

Thus, it is to Congress, and not this Court, that the Speaker should address his consent of the governed grievance so that the People of Puerto Rico may live out those sacrosanct guarantees upon which the United States was formed.

By the Court:

Maria R. Hamilton, Clerk

cc: Hon. Laura Taylor Swain, Ada Garcia-Rivera, Clerk, United States District Court for the District of Puerto Rico, Hermann D. Bauer-Alvarez, Timothy W. Mungovan, John E. Roberts, Mark David Harris, Martin J. Bienenstock, Julia D. Alonzo, Jonathan E. Richman, Guy Brenner, Lucas Kowalczyk, Shiloh Rainwater, Elliot Rainer Stevens, Shannon McGowan, Emil J. Rodriguez-Escudero, Jorge Martinez-Luciano, Luis C. Marini-Biaggi, Peter M. Friedman, John J. Rapisardi, Carolina Velaz-Rivero, William J. Sushon, Matthew P. Kremer, Jorge L. Capo-Matos, Raymond E. Morales, Arturo V. Bauermeister-Fernandez, Rolando Emmanuelli-Jimenez, Jessica Esther Mendez-Colberg, Zoe Negron Comas, Edwin Quinones