*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 25-AA-0004

BLOOMBERG, INC., PETITIONER,

V.

DISTRICT OF COLUMBIA OFFICE OF TAX AND REVENUE, RESPONDENT.

On Petition for Review of an Order of the District of Columbia
Office of Administrative Hearings
(2019-OTR-00038)

(Argued February 24, 2026                    Decided April 1, 2026[*])

*Stephanie A. Lipinski Galland*, with whom *Sonia Shaikh* was on the briefs, for petitioner.

*Chris Edward Mendez*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, were on the brief, for respondent.

Before DEAHL and HOWARD, *Associate Judges*, and THOMPSON, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of respondent's motion to publish. Petitioner's motion for leave to file a surreply in response to that motion is granted and the Clerk shall file petitioner's surreply.

THOMPSON, *Senior Judge*: The petitioner in this matter, Bloomberg, Inc. (Bloomberg), challenges an October 24, 2024, Final Order of the District of Columbia Office of Administrative Hearings (OAH) and OAH's subsequent order denying Bloomberg's motion for reconsideration. OAH upheld a determination by the District of Columbia Office of Tax and Revenue (OTR) that Bloomberg, which owns substantially all of Bloomberg L.P. (BLP), was not entitled to claim, on its corporation franchise tax returns for tax years 2015-17, tax benefits based on BLP's status as a self-certified Qualified High Technology Company (QHTC) during those years. For the reasons that follow, we affirm the OAH orders.

## I.     Background

The material facts are not in dispute. Bloomberg is an S-Corporation that owns a general and limited partnership interest in BLP. For tax years 2012-17, BLP self-certified as a Qualified High Technology Company (QHTC). *See* D.C. Code § 47-1817.01(5) (defining QHTC).[1]

The Council of the District of Columbia (Council) created the QHTC designation through the New E-Conomy Transformation Act of 2000, D.C. Law 13-

---

[1] Section 47-1817.01(5) provides that a QHTC is "[a]n individual or entity organized for profit and leasing or owning an office in the District of Columbia" that has "10 or more qualified employees in the District" and derives "at least 51% of its gross revenues earned in the District from" services, sales, or technologies described in subparagraphs (I) through (V).

256, 48 D.C. Reg. 730 (2001), legislation that consisted of a "series of tax incentives to encourage high technology companies to locate to the District of Columbia," with the objective that such companies would be "an important source for new jobs and public revenue" for the District. New E-Conomy Transformation Act of 2000, D.C. Council, Report on Bill 13-752 at 1-2 (Oct. 19, 2000). The tax incentives (some of which have now been repealed) included tax credits for activities such as hiring full-time employees in the District and hiring qualified disadvantaged employees; assistance in obtaining space to lease; and exemptions from personal property tax, sales tax, corporate franchise tax, and capital gains tax. *Id.* at 2. The legislation also provided for a (now-repealed) preferential tax rate, with respect to the tax imposed on corporations under D.C. Code § 47-1807.02, for corporations that were QHTCs. *See* 48 D.C. Reg. 730, 744-45, 755 (Feb. 2, 2001) (enacting and referencing former D.C. Code §§ 47-1817.06(a)(1), (2)(C) (which established, for a QHTC located in a high technology development zone, a 0 percent corporate tax rate for the first five years after becoming a QHTC, and a 6 percent rate thereafter)).

Of particular relevance in this case, the legislation also amended the statutory definition of "unincorporated business" to provide that the term does not include a QHTC for purposes of Chapter 47 tax liability. *See* D.C. Code § 47-1808.01(5). Although BLP, as a partnership, would otherwise be treated as an unincorporated business for purposes of the unincorporated business franchise tax imposed under

D.C. Code § 47-1808.03, *see* D.C. Code § 47-1808.01, its QHTC status during the relevant tax years made it "exempt" from the franchise tax. 9 D.C.M.R. § 1108.1. However, it is undisputed that Bloomberg was required to report its distributive share of income from BLP on its District of Columbia incorporated business franchise tax return (Form D-20) for purposes of calculating any tax due.

In April 2019, OTR issued to Bloomberg a Notice of Proposed Audit Changes for tax years 2015, 2016 and 2017, informing Bloomberg that it was not permitted to claim "QHTC status and exemptions . . . for flow-through income from [BLP]" because QHTC exemptions, credits, and benefits are only for entities performing activities listed in Section 47-1817.01(5), and because Bloomberg "itself has never been engaged in performing any of the listed permitted activity." OTR advised that Bloomberg was liable for the corporation franchise tax at the regular franchise tax rates imposed by D.C. Code § 47-1807.02 for the relevant tax years. In its response to the audit findings, Bloomberg asserted that it was "entitled to apply a 0 percent tax rate for five years and a 6 percent tax rate thereafter, to qualifying QHTC income." Bloomberg's stated rationale was that BLP's QHTC income "must retain its character [as QHTC income] as it flows up to its corporate partner [Bloomberg]."

In Notices of Proposed Assessment of Tax Deficiency, OTR reversed what appear to be Bloomberg's application of a 0 percent tax rate and claim of non-refundable credits for tax year 2015; Bloomberg's application of a 0 percent tax rate

for tax year 2016; and its application of a six percent tax rate for tax year 2017.[2] OTR again advised Bloomberg that it could not "claim a QHTC status and benefits by attaching [BLP's] QHTC certificate to its tax returns for flow-through income." Bloomberg was required to pay tax deficiencies for tax years 2015, 2016, and 2017.

Bloomberg appealed to OAH, and the parties filed cross-motions for summary disposition. After a hearing on the motions, OAH issued the Final Order granting summary judgment in favor of OTR and affirming OTR's denial of the QHTC-related deductions and credits Bloomberg had taken. In a December 2, 2024, order, OAH denied Bloomberg's motion for reconsideration.

---

[2] We say "what appear" (from the Notices of Proposed Assessment of Tax Deficiency) to be the methodologies described in the text above because the record contains inconsistent descriptions of the exact QHTC-related exemptions or deductions Bloomberg claimed. Bloomberg's counsel told the OAH Administrative Law Judge (ALJ) that Bloomberg declared its income from BLP on its Form D-20 and then "subtracted out that income" on "a line called nonrefundable credits line." In its appeal to OAH, Bloomberg asserted that it was proper for its tax return to "state the income of BLP and the offsetting reduction/credit." The ALJ found that for tax years 2015-17, Bloomberg "claim[ed] nonrefundable tax credits based on [BLP's] status as a QHTC." And, as described in the text above, Bloomberg responded to the Notice of Proposed Audit Changes by appearing to claim that, for tax year 2017, it was entitled to pay the corporate franchise tax (which would have been nine percent at the standard rate) at the corporate QHTC rate (six percent), as if the BLP partnership's QHTC status flowed to the corporate entity Bloomberg. Precisely how Bloomberg attempted to claim QHTC benefits appears not to be material, as the issue before us is broader: whether, for tax years 2015-17, Bloomberg was entitled to claim QHTC tax benefits based on BLP's status as a QHTC.

This petition for review followed. Bloomberg contends that it was entitled to "the full flow through benefit of BLP's QHTC status and related attributes"[3] and that OAH erred in holding otherwise. Bloomberg makes three specific arguments as to how OAH erred: (1) by failing to understand that BLP's QHTC exemption and associated credits passed through to Bloomberg under established partnership principles of federal and District of Columbia law; (2) by "denying the flow-through treatment of QHTC benefits while [permitting the District to] tax[] the related partnership income at the partner level" at the partner's full corporate rate, thereby undermining the Council's legislative objectives in enacting the QHTC legislation; and (3) by failing to consider that OTR's implementation of QHTC benefits— specifically, the OTR policy requiring BLP to file a merely informational return on Form D-65—afforded BLP itself no opportunity to calculate and claim QHTC benefits. Below, we address Bloomberg's arguments in turn.

---

[3] Bloomberg also asserts that the OTR administrative process was inconsistent with due process principles. However, it does not develop this argument and thus we deem it waived. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

## II. Standard of Review

"Although we accord appropriate weight to the interpretation of a statute by the agency which is charged with its enforcement, and which therefore ordinarily has specialized expertise," *Washington v. D.C. Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008), we do not accord any special weight to OAH's legal determinations. *Booz Allen Hamilton Inc. v. D.C. Off. of Tax & Revenue*, 308 A.3d 1205, 1210 (D.C. 2024). That is because "OAH is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies and thus lacks the subject-matter expertise justifying the deference to agency interpretations of statutes or regulations," such as those involved in this case. *D.C. Metro. Police Dep't v. Porter*, 332 A.3d 534, 537 (D.C. 2025) (ellipsis and internal quotation marks omitted) (quoting *Vizion One, Inc. v. D.C. Dep't of Health Care Fin.*, 170 A.3d 781, 791 (D.C. 2017)).

While this court has generally accorded a level of deference to OTR's interpretation of its governing statute, *see, e.g.*, *D.C. Off. of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.*, 56 A.3d 477, 480 (D.C. 2012), whether this court still owes deference to specialized-agency interpretations of the statutes they are charged with

administering remains something of an open question.[4] We need not resolve the issue of whether we owe deference to OTR's interpretations at issue here, however, because we agree with OTR without according any deference to its legal conclusions. *See Booz Allen*, 308 A.3d at 1210.

Generally, "we will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result." *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022) (internal quotation marks and brackets omitted). "The plain meaning of a statute may not be controlling, however, when there is a clearly expressed legislative intention to the contrary." *Booz Allen,* 308 A.3d at 1209 (internal quotation marks omitted) (quoting *Hensley v. D.C. Dep't of Emp. Servs.*,

---

[4] In a number of recent decisions, this court has "reserve[d] judgment on any potential impact of *Loper Bright Enterprises* [*v. Raimondo*, 603 U.S. 369 (2024),] on our well established deference to an agency's interpretation of a relevant statute and regulations." *Vornado 3040 M St. LLC v. District of Columbia*, 318 A.3d 1185, 1195 n.7 (D.C. 2024) (citation modified). In *Loper Bright*, the Supreme Court held that federal courts reviewing agency action under the federal Administrative Procedure Act must "decide legal questions by applying their own judgment," rather than by deferring to an agency's interpretation of an ambiguous statute. 603 U.S. at 392. In the wake of *Loper Bright*, the Council enacted the "Review of Agency Action Clarification Amendment Act of 2025," D.C. Act 26-111, 72 D.C. Reg. 8154, which became effective on September 10, 2025, "to codify agency deference as it existed prior to the Supreme Court's decision in [*Loper Bright*]." In other pending litigation, this Council legislation has been challenged as ultra vires, but we need not resolve its legality here. There is also legislation pending in Congress (H.R. 3766) that would (as its title describes) "prohibit the District of Columbia from requiring tribunals in court or administrative proceedings in the District of Columbia to defer to the Mayor of the District of Columbia's interpretation of statutes and regulations."

283 A.3d 123, 127 (D.C. 2022)). To discern legislative intent, "[w]e consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *In re Macklin*, 286 A.3d at 553 (quoting *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020)). "We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Id*.

### III.    Analysis

**A. The Claim that BLP's QHTC Exemption and Associated Credits Passed Through to Bloomberg Under Federal Tax Principles and District of Columbia Law, Including OTR Regulations**

The first premise for Bloomberg's opening argument—that BLP's QHTC exemption and associated tax credits passed through to Bloomberg—is Bloomberg's observation that, under "bedrock" federal tax principles, federal tax credits are allocated to partners in proportion to their distributive shares of a partnership, as there is a flow-through of both income and attributes to partners. The argument does not help resolve the issue before us because, as this court has recognized repeatedly, federal and District law differ significantly in the treatment of partnership income. As Bloomberg acknowledges, a partnership is not a taxable entity for federal tax purposes. "In marked contrast to the federal system, the District treats most unincorporated businesses [including most partnerships] as taxable entities in their own right[.]" *School St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798,

801 (D.C. 2001); *D.C. Off. of Tax & Revenue v. Sunbelt Beverage, LLC*, 64 A.3d 138, 142 (D.C. 2013) ("[T]here is a significant difference between the District business franchise tax filing system and its federal analog."). That OAH's determination regarding Bloomberg's entitlement to claim BLP-related tax exemptions and credits under District of Columbia law diverges from the result that might ensue under federal tax principles is no reason to disturb the OAH final decision in this case.

Bloomberg also cites D.C. Code § 47-1803.02(a)(2)(D) in support of its position that "partnership items retain their character and flow through to the partners." But the tax treatment Bloomberg described to the ALJ and in its appeal to OAH—deducting its distributive share of BLP's income in determining its taxable income, so as to eliminate any tax otherwise due on the income it received from BLP—is not consistent with District of Columbia statutory law. D.C. Code § 47-1803.02(a) sets forth a definition of taxable "gross income" for purposes of the franchise tax. Subparagraph 47-1803.02(a)(2)(D) provides that "gross income" (generally, "all income from whatever source derived") excludes:

> [i]n the case of any person entitled to the distributive share of a trade or business net income that is from an unincorporated business as defined in § 47-1808.01, an amount equal to the pro rata distributive share, to the extent that portion of the distributive share so excluded is directly or indirectly reported by and taxed against any person under the provisions of this chapter.

*Id.* As OAH succinctly summarized, because D.C. Code § 47-1808.01(5) "expressly excludes a [QHTC] from the definition of unincorporated business, the plain meaning of [Subparagraph] 47-1803.02(a)(2)(D) is that income derived from a [QHTC], such as [BLP], does not qualify for an exclusion from gross income."

We agree with OAH: Given that BLP's income is not taxed in the manner Subparagraph 47-1803.02(a)(2)(D) contemplates, the exclusion from gross income that the subparagraph establishes "does not provide a basis for [Bloomberg] to exclude its 'distributive share' of the flow-through income from . . . unincorporated QHTC [BLP]."[5] Bloomberg also "has not pointed to any [other] . . . District law that could provide a basis for excluding flow-through QHTC income from Bloomberg's . . . gross income."[6] Moreover, under District of Columbia law, such an exclusion of income cannot be implied. *See Aziken v. District of Columbia*, 194 A.3d 31, 35-36 (D.C. 2018) ("Tax exemptions, in particular, will never be implied in a statute, but instead, must be expressed in clear and unmistakable terms, or must appear by

---

[5] Bloomberg argued to OAH that BLP's income was "taxed on the UB [unincorporated business] level," but was subject to a QHTC benefit that offset the tax liability. However, even if it is fair to treat BLP's exemption from franchise taxation as equivalent to its being taxed but subject to an offset (or as equivalent to its being taxed at a 0% tax rate), Subparagraph 47-1803.02(a)(2)(D) still does not support the result Bloomberg urges, because BLP is not an "unincorporated business," which it would have to be for Subparagraph 47-1803.02(a)(2)(D) to apply by its terms.

[6] As OTR's brief aptly puts it, Bloomberg offers an "atextual reimagination of the applicable statutory provisions."

necessary implication from the language used." (internal quotation marks and citations omitted)).

Bloomberg contends that to read the statute in the way OAH did, which results in taxing its income from QHTC BLP at the partner level, produces the "double taxation" that the Council sought to eliminate in enacting the QHTC legislation. Like OAH, we are not persuaded by that argument. As OAH reasoned, "QHTC owners subject to state income tax" would pay the "tax at the ownership level only," and "individuals residing in states without income tax" would not be "taxed at the QHTC level or at the ownership level" for the income that flowed to them, with the result that exempting only the partnership and not its partners from taxation "is consistent with another stated legislative goal: 'eliminating double taxation of investments in unincorporated businesses'" (quoting Council Report on Bill 13-752 at 3). *See also School St. Assocs.*, 764 A.2d at 802 (observing that implementation of Subparagraph 47-1803.02(a)(2)(D) "avoid[s] double taxation for unincorporated business activity"). As the result required by Subparagraph 47-1803.02(a)(2)(D)'s plain language thus is not "patently wrong or absurd, our [statutory interpretation] task comes to an end." *In re Al-Baseer*, 19 A.3d 341, 344 (D.C. 2011).

Bloomberg's next argument is premised on the OTR regulation at 9 D.C.M.R. § 1108.2, which sets out two examples of how 9 D.C.M.R. § 1108.1 applies.

According to Bloomberg, the first example, set out in Section 1108.2(a),[7] "makes clear that the QHTC exemption applies at the partner level, with no requirement that the partner itself be a QHTC." Bloomberg also asserts that Section 1108.2 "'institutes the principle' that partnership income and attributes (including all QHTC

---

[7] The first example is as follows:

> Company F, a Certified QHTC, is a limited liability company that has elected for Federal tax purposes to be taxed as a partnership. D.C. Official Code § 47-1808.1(5) provides that Company F is exempt from the unincorporated business franchise tax. The partnership QHTC will file a District information income tax return, Form D-65, and the partnership income will flow through to the partners. The partners who are residents of the District will report their prorated partnership income on their District individual income tax returns, Form D-40. The partners who are not residents of the District will report their prorated partnership income on their individual income tax returns in the state in which they are a resident.

9 D.C.M.R. § 1108.2(a).

Bloomberg asserts that this first example shows that "the District relinquishes taxing jurisdiction over a nonresident partner's distributive share once that income has been allocated outside the District" and argues that "[b]y the same logic, the District's QHTC rules do not convert otherwise exempt QHTC earnings into taxable income" at the partner level. However, the District's relinquishment of taxing jurisdiction over an individual nonresident partner's distributive share has to do with the District's lack of authority to tax non-resident income, *see Banner v. United States*, 428 F.3d 303, 306 (D.C. Cir. 2005) (noting that Congress has prohibited a non-resident income tax in the District) (citing D.C. Code § 1-206.02(a)(5)), not with a partnership's QHTC status.

credits and incentives) flow through to partners."[8] Stating that same point in different words, Bloomberg contends that Section 1108.2(a) indicates that "the partnership *items* flow through to the owners/partners" (emphasis added).

We reject Bloomberg's interpretations of Section 1108.2(a). The plain language of the example does not denote what Bloomberg describes, and the inference Bloomberg draws cannot be squared with the plain text of Section 1108.1. Section 1108.1 states that "[a] QHTC that is not a corporation may claim a partial refund of its retraining costs . . . by timely filing a Claim for Refund-QHTC Retraining Cost, Form FP-332" and "may claim the sales and personal property tax benefits provided by the Act as well as the real property benefits of Title III of the Act." In other words, Section 1108.1 does *not* contemplate the pass-through of

---

[8] Bloomberg asserts in addition that "[t]he District's own guidance, including FR-399, has consistently recognized that QHTC status and its associated benefits flow through to partners[.]" Bloomberg has not supplied a copy of any Form FR-399 on which it might be relying, but OTR's current Form FR-399 instructions state that retraining expenses "may no longer be taken as a refundable credit" and that "[e]ffective July 1, 2021, the personal property tax exemption for QHTCs has been eliminated." *See* OFFICE OF TAX AND REVENUE, 2024 FR-399: Qualified High Technology Companies (QHTC), https://otr.cfo.dc.gov/sites/default/files/dc/sites/otr/publication/attachments/2024_FR-399_03212025.pdf; https://perma.cc/2D57-GN2L. We do not discern that either those described changes or the policies they replaced support Bloomberg's assertion about QHTC benefits flowing through to partners. We note that refundable credits are "fictional amount[s] that a taxpayer 'overpaid' and can therefore have 'refunded,'" *Sarmiento v. United States*, 678 F.3d 147, 154 (2d Cir. 2012), such that when retraining expenses were a refundable credit, they could be claimed as a "refund" even by an unincorporated QHTC that was exempt from the franchise tax.

QHTC tax incentives, but instead contemplates that the unincorporated QHTC will claim those benefits for itself.

### B. The Claim that Denying Flow-Through Treatment Contravenes the Council's Legislative Intent in Enacting the QHTC Legislation

Bloomberg highlights the Council's intent to "provide an incentive for profitable QHTCs to elect to operate in the District as partnerships," 48 D.C. Reg. at 755, and argues that OAH's interpretation "defeats the purpose of the QHTC regime." One legislative purpose, Bloomberg asserts, was "to equalize the tax treatment of incorporated and unincorporated QHTCs, not to penalize pass-through entities or their partners."[9] However, at least one witness who testified before the

---

[9] Bloomberg provides no citation for its "equalization" claim, and we see no support for it in the legislative history. Indeed, it is difficult to see how that purported legislative intent accords with the legislative text. "[T]he intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980)) (citation omitted). The language lawmakers used in the QHTC legislation was that the term "unincorporated business" does not include a QHTC for purposes of the chapter 47 franchise tax, *see* D.C. Code § 47-1808.01(5); and that incorporated QHTCs that are corporations would have a time-limited exemption from the corporate franchise tax if they are located in a technology zone and thereafter would be subject to the corporate franchise tax at a 6 percent rate. *See* 48 D.C. Reg. 730, 745, 755 (Feb. 2, 2001) (enacting former D.C. Code § 47-1817.06). Similarly, as the fiscal impact statement prepared by the District's Chief Financial Officer to accompany the QHTC legislation specifically noted, there was a contrast between the outright exemption from the franchise tax for unincorporated QHTCs and the availability of nonrefundable "wage and relocation [tax] credits" against the franchise tax for incorporated QHTCs. *See* 48 D.C. Reg. at 755. These quite different approaches to

Council on the QHTC bill (Jay Young, President of the Washington D.C. High Technology Council, Inc.) endorsed changing the proposed legislation because he specifically preferred a bill that "exempt[ed] companies . . . that invest in [QHTCs]." Report on Bill 13-752, at 8. Thus, it is unlikely that the Council failed to understand that the legislation did not eliminate franchise taxes on incorporated entities that invested in unincorporated QHTCs.

Moreover, the legislation did not fail to provide incentives for such investors. Unincorporated QHTCs would be permitted to claim, for example, "the sales and personal property tax benefits provided by the Act as well as the real property benefits of Title III of the Act," 9 D.C.M.R § 1108.1, thereby boosting the net income that flowed through to their partner/investors. And, in any event, to the extent that the "denial of flow-through QHTC benefits while taxing the corresponding partnership income at the partner level" creates an "economically irrational outcome," as Bloomberg argues, the answer from us must be that whether the statutory scheme "as written reflects good tax policy or not is beyond our expertise and function." *Booz Allen*, 308 A.3d at 1211-12; *see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52 (2008) ("[I]t is not for us to substitute our view of policy for the legislation which has been passed by Congress.") (ellipsis

unincorporated and incorporated QHTCs do not bespeak an intent to equalize the treatment of the two categories.

and internal quotation marks omitted). Any incongruity in how the QHTC legislation works is a policy matter for the Council (which has already repealed several of its provisions).

### C. The Claim that OAH Failed to Consider the Absence of a QHTC Benefits Calculation on Form D-65

Finally, Bloomberg highlights that the Form D-65 that BLP was required to file as a QHTC partnership is "nothing more than an information return" that "provides no ability for an entity to claim . . . attributes at the entity level," such that QHTC benefits were "lost at the entity level" and partners were "stripped . . . of their QHTC benefits." Bloomberg contends that when QHTC credits "are not netted from the calculation of income subject to District tax on Form D-65[,] the partners receive the taxable income without the benefits of QHTC status." The remedy, Bloomberg urges, is that "the only lawful locus for applying the QHTC exemption/credit for partnership-generated income is the owner's or partner's D.C. Form D-20, *Corporate Franchise Tax Return*." What Bloomberg overlooks is that, even though QHTC tax benefits could not be claimed or calculated on the Form D-65, tax benefits could be claimed using other forms, such as the "Claim for Refund-QHTC Retraining Cost, Form FP-332" specifically mentioned in 9 D.C.M.R. § 1108.1.

\*       \*       \*

For the foregoing reasons, we are unpersuaded by Bloomberg's arguments challenging the OTR deficiency notices and the OAH orders upholding them. Accordingly, the OAH orders denying Bloomberg's motion for summary judgment, granting OTR's cross-motion for summary judgment, and denying Bloomberg's motion for reconsideration are affirmed.

*So Ordered.*